## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**COURTLAND BISHOP, et al.,**

   **Plaintiffs,**       **Case No. 2:08-cv-766**
               **JUDGE GREGORY L. FROST**
  **v.**            **Magistrate Judge Mark R. Abel**

**THE CHILDREN'S CENTER FOR**
**DEVELOPMENTAL ENRICHMENT, et al.,**

   **Defendants.**


## OPINION AND ORDER

This matter is before the Court on Defendants' motion for summary judgment on

Plaintiffs' state law claims (ECF No. 42), Plaintiffs' memorandum in opposition (ECF No. 47),

Defendants' reply memorandum (ECF No. 48), Plaintiffs' motion to file a surreply to

Defendants' motion for summary judgment on Plaintiffs' state law claims (ECF No. 49) and

Defendants' memorandum in opposition (ECF No. 50).  For the reasons that follow, the Court

**GRANTS in part and DENIES in part** both motions.

### I.  Background

**A.  Facts**

Plaintiffs Courtland and Michelle Bishop and their minor son C.B. reside in the

Worthington, Ohio School District ("Worthington Schools").  In 2002 Worthington Schools

placed C.B. at Oakstone Academy ("Oakstone") after he was identified as a child with

disabilities under the Individuals with Disabilities Education Improvement Act ("IDEIA"),[1] 20

U.S.C. § 1400 *et seq.*  Oakstone is a school that educates autistic children in an environment with

typically developing children.  C.B.'s typically developing sibling was also enrolled at Oakstone.

Defendant the Children's Center for Developmental Enrichment ("CCDE") is a private,

non-profit corporation that is organized under Ohio law for charitable and educational purposes.

CCDE operates Oakstone.  Rebecca Morrison, Ph.D., is CCDE's Chief Executive Officer

("CEO") and is named as a defendant in this action in her individual and official capacities.

Oakstone provided educational services to C.B. pursuant to his Individualized Education

Plan ("IEP") until August 2005.  On August 29, 2005, the first day of school for the 2005-2006

school year, the Bishops accompanied C.B. to CCDE.  When the Bishops discovered that C.B.

had been placed in an all-day preschool class they refused to allow C.B. to stay in that

classroom.  The Bishops believed that the classroom assignment was not in compliance with

C.B.'s IEP.  The Bishops were upset and Mr. Bishop used foul language to express his feelings

about the placement.  CEO Morrison was attending to a family emergency that day and was not

present at the school.  CCDE Administrator Nanci Morris suggested that the Bishops take C.B.

home and wait for Morrison to call.  The Bishops followed Morris' suggestion.  On August 31,

2005, Morrison left a telephone message at the Bishop's home stating that C.B. "does not have a

placement at Oakstone preschool [and] has been referred back to the [Worthington School]

district[.]"  (ECF No. 42-1 at 40.)

---

[1]In 2004, Congress re-authorized the Individuals with Disabilities Education Act
("IDEA") as the IDEIA.  *See* Pub. L. No. 108-446, 118 Stat. 2647 (Dec. 3, 2004), effective July
1, 2005. Throughout this Opinion and Order, statutory references will be to the IDEIA, except
when quoted as the IDEA in opinions cited by this Court.

The parties disagree as to the ramifications of these occurrences.  The Bishops contend that Morrison expelled C.B. after the Bishops refused to place C.B. in a classroom that was not in compliance with C.B.'s IEP.  Defendants claim that C.B.'s classroom assignment was in compliance with the IEP, and when the Bishops refused to place C.B. in that classroom they effectively withdrew C.B. from CCDE.

**B.  Procedural History**

On October 25, 2005, the Bishops filed a Complaint Notice and Request for Due Process Hearing with the Ohio Department of Education regarding what they believe was C.B.'s expulsion from Oakstone.  Prior to the hearing, the Bishops withdrew this complaint and hearing request.

On May 30, 2006, the Bishops, individually and as next friends of C.B., filed an action in this division of this district, Case No. 06-cv-404 ("*Bishop I*"), alleging that, as a result of C.B.'s expulsion from Oakstone, Worthington Schools, the Ohio Department of Education, and CCDE: (1) violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"); (2) violated the Americans with Disabilities Act of 1991, 42 U.S.C. § 12131; (3) denied C.B. a free and appropriate public education under the IDEIA; and, (4) denied Plaintiffs due process in violation of 42 U.S.C. § 1983 ("Section 1983").  Plaintiffs also claimed that Defendants were liable for breach of contract and tortious interference with contract.  *Bishop I* was assigned to United States District Judge Algenon L. Marbley.  On March 5, 2007, Judge Marbley granted Defendants' motion to dismiss for Plaintiffs' failure to exhaust their available administrative remedies.

On August 14, 2007, after dismissal of *Bishop I*, the Bishops filed an administrative due

process complaint against Worthington Schools, the Ohio Department of Education, and CCDE. CCDE challenged the sufficiency of the due process complaint.  The District Level Hearing Officer ("DLHO"), however, found the complaint sufficient on August 27, 2007.  CCDE then moved for dismissal of the complaint for failure to state a claim upon which relief could be granted and for untimely or improper service.  On October 16, 2007, the DLHO found service adequate, but concluded that the complaint against CCDE failed to state a claim upon which relief could be granted.

The Bishops requested state level review and CCDE filed its appeal/cross appeal of the decision denying CCDE's motion to dismiss for failure to provide legally required notice.  These administrative appeals resulted in two decisions.  In the first decision, the State Level Review Officer ("SLRO") denied the Bishops' appeal, affirming the dismissal of CCDE from the due process proceedings by "Final Decision and Entry" dated January 25, 2008.  In the second decision, issued on March 17, 2008, the SLRO denied CCDE's appeal/cross appeal ("Final Decision and Entry as to CCDE"), which had the effect of finalizing the administrative process with regard to CCDE.  *See CCDE v. Machle*, No. 2:08-cv-817, slip op. (S.D. Ohio March 6, 2009) (holding that the Final Decision and Entry as to CCDE was a final and appealable administrative decision).  The administrative appeal process continued thereafter as to the Bishops and Worthington Schools.  The administrative process culminated in a Final Decision and Entry issued on June 12, 2008.

On August 8, 2008, the Bishops, individually and as next of friends of C.B., filed the instant action alleging claims for relief under the Rehabilitation Act, Section 1983, and Ohio law ("*Bishop II*").  On March 6, 2009, this Court granted summary judgment to CCDE in *Bishop II*.

(ECF No. 16.)  The Court determined that Plaintiffs' federal law claims were subject to a two-year statute of limitations period and that Plaintiffs' claims for relief accrued on August 31, 2005, rendering them barred by the applicable statute of limitations.  The Court declined to exercise supplemental jurisdiction over Plaintiffs' state law claims.

On August 25, 2008 CCDE filed an entirely different action for attorney fees and for reversal of certain aspects of the Final Decision and Entry as to CCDE.  *See CCDE v. Machle*, No. 2:08-cv-817.  On March 6, 2009, this Court granted the defendants' motion to dismiss that action.  *CCDE v. Machle*, No. 2:08-cv-817, slip op. (S.D. Ohio March 6, 2009) (ECF No. 33.) Defendants appealed this decision to the United States Court of Appeals for the Sixth Circuit on April 4, 2009.  On July 19, 2010, the Sixth Circuit affirmed this Court's decision.

On April 2, 2009, Plaintiffs appealed *Bishop II* to the United States Court of Appeals for the Sixth Circuit.  (ECF No. 18.)  On August 26, 2010, the Sixth Circuit issued its decision in which it found that this Court correctly determined that "Plaintiffs had until August 31, 2007, to file their claims under the Rehabilitation Act or §1983, and the district court correctly concluded that the claim accrued and the statutory period began running on August 31, 2005."  *Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 537 (6th Cir. 2010).  The court, however, concluded that Plaintiffs' federal law claims were not barred by the statute of limitations because they were subject to minority tolling.  *Id.*  The Sixth Circuit, therefore, reversed and remanded the federal law claims and also determined that, "[s]ince the district court will once again have federal claims before it, we remand the state law claims to the district court to allow it to determine whether to exercise supplemental jurisdiction in light of this change in circumstances."  *Id.* at 538.

On October 15, 2010, the Sixth Circuit issued its mandate in *Bishop II*. (ECF No. 26.) On October 18, 2010, this Court noticed a status conference scheduled for October 26, 2010.

On October 26, 2010, this Court issued an order memorializing the status conference and indicating that "[a]ll parties were represented and agreed to" the schedule setting forth discovery and dispositive motions deadlines, the final pretrial conference, and the trial. (ECF No. 30.) Although the agreed scheduling order established April 21, 2011 as the date to file dispositive motions, Defendants filed a motion for summary judgment on Plaintiffs' state law claims on January 16, 2011. (ECF No. 42.) That motion is now ripe for review.

On January 12, 2011, Plaintiffs moved for and were later granted an extension of the deadlines established in the scheduling order. (ECF Nos. 39, 46.) On April 13, 2011, Plaintiffs again moved for and were later granted an extension of the deadlines established in the scheduling order. (ECF Nos. 51, 52.)

On March 2, 2011, Plaintiffs filed a motion for leave to file a surreply to Defendants' reply memorandum in support of their motion for summary judgment on Plaintiffs' state law claims (ECF No. 49) and attached the surreply as an exhibit (ECF No. 49-1). That motion is ripe for review.

## II.  Plaintiffs' Motion

Plaintiffs request permission to file a surreply to Defendants' reply memorandum in support of their motion for summary judgment on Plaintiffs' state law claims.

### A.  Standard

The Local Civil Rules permit the filing of a motion and memorandum in support, a memorandum in opposition, and a reply memorandum. S. D. Ohio Civ. R. 7.2(a)(1), (2). The

6

rule provides that "[n]o additional memoranda beyond those enumerated will be permitted except upon leave of court for good cause shown."  S. D. Ohio Civ. R. 7.2(a)(2).

**B.  Discussion**

 Plaintiffs contend that good cause exists to file their surreply because Defendants raised three issues for the first time in their reply memorandum in support of their motion for summary judgment on Plaintiffs' state law claims.

 **1.  Breach of Contract Claim**

 Plaintiffs contend that Defendants "did not argue, beyond a passing mention, the issue of whether Count III of the Amended Complaint fails to state a claim upon which relief can be granted" until they filed their reply brief.  (ECF No. 49-1 at 1.)  This Court disagrees.

 As Defendants accurately point out, they argued in the opening paragraph of their motion for summary judgment that Plaintiffs failed to allege a breach of contract claim and also argued it under heading I. B. of the motion, and on pages, 1, 6, 14, and 18.  Thus, Defendants did not for the first time in their reply raise the argument that Plaintiffs' failed to adequately plead a breach of contract claim.  Consequently, the Court **DENIES** Plaintiffs' motion to file a surreply as it relates to Defendants' claim that Plaintiffs failed to sufficiently allege a breach of contract claim.

 **2.  Damages from Breach of Contract Claim**

 Plaintiffs contend that Defendants raised for the first time in their reply memorandum "the issue that Count III's prayer for damages does not claim damages arising from breach of contract."  (ECF No. 49-1 at 4.)  This Court agrees.  Nowhere in Defendants' motion for summary judgment do they argue that Plaintiffs failed to sufficiently allege damages arising from an alleged breach of contract.  Therefore, the Court **GRANTS** Plaintiffs' motion to file a

surreply as it relates to Defendants' argument that Plaintiffs failed to make an adequate showing of damages resulting from a contract breach.

### 3.  Worthington Schools' Failure to Demand Contract Compliance

Plaintiffs assert that "[a]nother argument raised for the first time in Defendants' Reply (Doc. 48, p. 8) is their apparent assertion that no cause of action for breach of contract arose because Worthington never demanded that CCDE comply with the contract."  (ECF No. 49-1 at 6.)  This Court agrees.

In their memorandum in opposition to Plaintiffs' motion to file a surreply, Defendants do not disagree that they raised this issue for the first time in their reply brief.  Instead, Defendants argue the merits of whether a claim for relief for breach of contract could survive if Worthington Schools failed to demand performance.  (ECF No. 50 at 5-6.)  That argument is of no moment in the analysis here.  Accordingly, the Court **GRANTS** Plaintiffs' motion to file a surreply as it relates to Defendants' argument that Worthington Schools failed to demand performance of the contract.

### III.  Defendants' Motion

Defendants move for summary judgement on Plaintiffs' third and fourth claims for relief, which are both state law claims.

### A.  Standard

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence

of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie Power Prods., Inc.*, 328 F.3d at 873 (quoting *Anderson*, 477 U.S. at 248). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

## B. Contract Claim

Defendants argue that they are entitled to summary judgment on Plaintiffs' contract claim because no contract existed and that, even if a contract did exist, Plaintiffs failed to allege or

prove a breach of that contract, the contract was properly rescinded, and Plaintiffs, as third party beneficiaries of the contract, cannot sue for loss of benefits when the benefits were offered and refused.  Defendants' arguments are not well taken.

### 1.  Allegations of Breach of Contract

Defendants argue that Plaintiffs' third claim for relief is that a contract existed–*not* that a contract existed and was breached.  The Court is simply at a loss to understand Defendants' argument.  What would be the purpose of asking the Court to determine whether a contract existed in this case if Plaintiffs did not believe that the contract was breached?  Indeed, a contract is "actionable upon breach," *Kostelnik v. Helper*, 96 Ohio St. 3d 1, 3 (Ohio 2002), not in the absence of a breach.  Regardless, the Court disagrees with Defendants' position that Plaintiffs' amended complaint fails to sufficiently allege a breach of contract claim.

In the amended complaint, Plaintiffs allege that there was a contract between Worthington Schools and CCDE for educational services for C.B. for the 2005-2006 school year and that CEO Morrison expelled C.B. before the services were rendered, *i.e.*, CCDE/Morrison breached the contact.  Plaintiffs further allege that C.B. "was a third party beneficiary of said contract for education memorialized by the contract and [IEP]."  (ECF No. 34 at ¶ 34.)  Moreover, under the tortious interference claim, Plaintiffs specifically refer to their breach of contract claim alleging that "Defendant Rebecca Morrison deliberately and intentionally breached said contract by expelling the minor plaintiff from CCDE" and that she had a duty to ensure the contract was not breached.  (ECF No. 34 at ¶¶ 37, 38.)  Finally, in their prayer for relief, Plaintiffs again refer to the breach of contract claim, stating that they request the Court to declare that the actions of CCDE and Morrison were in breach of the contract between CCDE

and Worthington Schools.  These allegations easily meet the requirement that the complaint

contain "a short and plain statement of the claim showing that the pleader is entitled to relief"

Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is

and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (*overruled in*

*nonrelevant part by Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### 2.  Formation of Contract

Defendants argue that there is no genuine issue of material fact as to whether there was a

contract between Worthington Schools and CCDE.  In Ohio, "[t]he elements of a contract

include the following:  an offer, an acceptance, contractual capacity, consideration (the

bargained-for legal benefit or detriment), a manifestation of mutual assent, and legality of object

and of consideration."  *Lake Land Empl. Group of Akron, LLC v. Columber*, 101 Ohio St. 3d

242, 246 (Ohio 2004) (citing *Kostelnik v. Helper*, 96 Ohio St. 3d 1 (Ohio 2002)).  Defendants

contend that Plaintiffs cannot show that there was an acceptance, consideration, or a

manifestation of mutual assent, and that there was a condition precedent that was not met, which

also prevents contract formation.

#### a.  Acceptance

In their motion, Defendants contend that the agreement offered by CCDE to Worthington

Schools permitted acceptance only by payment of the required tuition, which was $25,000 for

the 2005-2006 school year.  (ECF No. 42-1, Ex. 11.)  Defendants assert that Worthington

Schools' representative Lynne Hamelberg testified that before C.B. was expelled or withdrew

from CCDE, Worthington Schools had not yet paid CCDE for C.B.'s tuition for the 2005-2006

school year, that Worthington Schools had requisitioned $23,000 for the tuition payment, and

11

that it had taken no steps to obtain the full amount of the tuition.  Defendants argue:

> When an offer is conditioned upon a specific form of acceptance failure to meet that condition is not an acceptance.  "[T]he general rule is that, where an offer prescribes the place, time, or manner of acceptance, those terms must be strictly complied with by the offeree."  *Ritchie v. Cordray*, 10 Ohio App. 3d 213 (10th App. Dist. 1983).  Both CCDE and the Worthington School District agree that Worthington did not send the required tuition.  Worthington failed to meet the requirement for acceptance, i.e. failed to pay the tuition "upon receipt."  CCDE's offer was never accepted and no contract was formed.

(ECF No. 42 at 4) (footnote omitted).

In response, Plaintiffs contend that the agreement on its face shows that it was not conditioned upon a specific form of acceptance.  This Court agrees.  The contract provides in its entirety:

Agreement for Placement

This agreement is entered into on August 29, 2005, by [CCDE]/Oakstone Academy, a not-for-profit corporation and Worthington Schools.

Whereas, Worthington City Schools desires to contract with [CCDE]/Oakstone Academy for services for the 2005-2006 school year.

Now, therefore the parties agree as follows:

1. Worthington City Schools will receive educational placement for [C.B.].

2. Placement will provide classroom-based services with behavioral support to meet the child's goals as identified by the Individual Education Plan.

3. Worthington City Schools agrees to pay the sum of money in the amount of $25,000.00 for [C.B.].

4.  Tuition is payable upon receipt to CCDE/Oakstone Academy at 2655 Oakstone Drive Columbus, Ohio 43231.

5.  This agreement shall be in effect for the 2005-2006 School Year.

Worthington City Schools                         [CCDE]/Oakstone Academy

12

_____                    _____
School District Representative                    Rebecca Morrison, CEO

(ECF No. 42-1 at 51, Ex. 11.)  The agreement was signed by Morrison and a Worthington

Schools representative.

Defendants rely on *Ritchie v. Cordray*, for the proposition that "the general rule is that,

where an offer prescribes the place, time, or manner of acceptance, those terms must be strictly

complied with by the offeree."  10 Ohio App. 3d at 215 (citing *Schirtzinger v.. Albery*, Franklin

App. No. 9984, unreported (May 25, 1971); Restatement (Second) of Contracts § 60 (1981)).

Defendants' reliance upon *Ritchie* is misplaced.  The Restatement of the Law of Contracts, to

which the *Ritchie* court cites to support this proposition, gives examples of contract language

prescribing a mode of acceptance: "I must receive your acceptance by return mail."; "Send your

office boy around with an answer to this by twelve o'clock."; "You must accept this, if at all, in

person at my office at ten o'clock tomorrow."  *Id.*

In the instant action, there was no specifically prescribed way of acceptance, much less a

requirement that Worthington Schools' acceptance could be made only by performance.  As

Plaintiffs correctly point out, the term of the contract listed at number 4 that indicates that tuition

is payable upon receipt is simply a term of the contract similar to those terms listed under

numbers 1, 2, 3, and 5.  It is not a prescribed manner of acceptance of the contract.  "Unless

otherwise indicated by the language or the circumstances, an offer invites acceptance in any

manner reasonable in the circumstances."  Restatement (Second) of Contracts, § 30(2) (1981).

Signature of the parties' representative was certainly a reasonable manner of acceptance here.

Indeed, the Agreement for Placement appears to have contemplated that manner of acceptance.

13

### b. Consideration

Under Ohio law, consideration consists of either a benefit to the promisor or a detriment to the promisee.  "To constitute consideration, the benefit or detriment must be 'bargained for.' " *Carlisle v. T & R Excavating, Inc.*, 123 Ohio App. 3d 277, 283 (Ohio Ct. App. 1997) (citations omitted).  "Something is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." *Id.* (citing Restatement (Second) of Contracts § 71 (1981)).  Defendants argue that "[t]he benefit bargained for under the purported 'contract' was not a promise to pay but was instead immediate payment."  (ECF No. 48 at 7.) Defendants further argue that the parties' course of dealings indicates that the understanding was that acceptance of the contract required immediate payment.  Finally, Defendants contend that Worthington Schools had only requisitioned $23,000 by the first day of classes of the relevant school year, which was "inadequate to fulfill the contract price."  (ECF No. 42 at 4.) Defendants' conclude that there was a failure of consideration.  Defendants' arguments and conclusion are not well taken.

The promise to pay $25,000 on C.B.'s behalf was a bargained for detriment to Worthington Schools and a benefit to CCDE.  It was adequate consideration under the law to create an enforceable contract.  Speculation as to how Worthington Schools would pay the amount due on the contract is irrelevant to this analysis.  Likewise of no consequence to this analysis is Defendants' argument that the parties' course of dealings indicates that acceptance of the contract required immediate payment.  Even if it were true that payment was due upon acceptance of the contract and that payment was not made, that does nothing to change the fact that a valid contract was formed.  Instead, it goes to the analysis of whether a party breached the

14

agreement.  That is, if the four corners of the contract and the parties' past course of dealings indicated that a term of the contract required immediate payment upon acceptance of the contract and the party did not make that payment, that party would be in breach of the contract.  The non-payment would not somehow invalidated the formation of the contract.

### c. Condition Precedent

Defendants assert that the Agreement for Placement between CCDE and Worthington Schools contained an implied condition precedent, *i.e.*, the agreement by the Bishops to the terms of the April 2005 IEP.  Specifically, Defendants argue that "[a] condition precedent to the formation of a contract in this instance was the Plaintiffs' agreement with the IEP and their desire that it be implemented at Oakstone Academy."  (ECF No. 42 at 5.)  Defendants continue this line of argument with the proposition that, because the Bishops refused to place C.B. in the classroom assigned by CCDE (one that CCDE claims was in compliance with C.B.'s IEP), it signified the Bishops' previous agreement with the IEP and their desire to implement the IEP was "not genuine."  (ECF No. 48 at 14.)  Defendants arguments are not well taken.

Leaving aside for a moment the determination of whether the classroom assignment was or was not in compliance with C.B.'s IEP, which is a contested issue that the Court deals with *infra*, Defendants' argument ignores the evidence before the Court.  The Bishops, CCDE staff, and Worthington Schools staff have testified that the Bishops believed that the offered classroom placement was *not* in compliance with C.B.'s IEP.  Based on that testimony, the Bishop's refusal to place C.B. in the assigned classroom does not call into question the genuiness of their desire to implement the IEP as written at Oakstone.  The sticking point is not whether the Bishops' consent was genuine, but instead what was contained in the IEP to which the Bishops consented

15

to have implemented at Oakstone.

Even if, however, Defendants' argument did not ignore the evidence before this Court, it still fails. As Plaintiffs correctly explain, Defendants' argument misconstrues the nature of a condition precedent. As explained in *Mumaw v. Western & Southern Life Ins. Co.*,:

> There is general agreement in the definition that a condition precedent is one that is to be performed before the agreement becomes effective. It calls for the happening of some event, or the performance of some act, after the terms of the contract have been agreed on, before the contract shall be binding on the parties.

97 Ohio St. 1, 11 (Ohio 1917); *see also Beatley v. Knisley*, 183 Ohio App. 3d 356 (Ohio Ct. App. 2009) (same).

Nothing in the Agreement for Placement makes it conditional upon the signing of the IEP, nor could there be such a condition in the agreement since the signing of the IEP had already occurred before the signing of the agreement. A condition is an event, not certain to occur, which must occur before performance under a contract becomes due. 13 Williston on Contracts § 38:5 (4th ed. 2011). There is no such condition in the Agreement for Placement.

### d. Mutual Assent

To form a valid contract in Ohio, there must be a meeting of the minds of the parties. *Noroski v. Fallet*, 2 Ohio St. 3d 77, 79 (Ohio 1982). Defendants argue:

> The Plaintiffs' consent to implementation of the IEP as "specified" created the understanding that the preschool placement called for in the IEP would satisfy the purported contract. Plaintiffs rejected the placement called for in the IEP. There was no meeting of the minds. No contract was formed.

(ECF No. 42 at 6.) This Court disagrees.

There is no dispute between the parties that Worthington Schools and CCDE signed a contract for C.B.'s educational services for the school year 2005-2006, which were to be

16

provided by CCDE and paid for by Worthington Schools. Thus, there was a meeting of the minds between the parties on the essential elements of this contract. *See Kostelnik*, 96 Ohio St.3d at 3-4 ("A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract."). The issue Defendants target is not one of contract formation, but instead, one of contract performance, *i.e.*, did CCDE and Worthington Schools comply with the terms of the contract by placing C.B. in the type of classroom prescribed by the IEP. That issue is discussed in the next section.

### 3. Breach of Contract

Defendants argue that, even if there was a contract between Worthington Schools and CCDE for C.D.'s educational placement, there is no genuine issue of material fact as to whether CCDE breached the contract. This Court disagrees.

The elements of a breach of contract claim are summarized as follows:

> [A] breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach.

*Lawrence v. Lorian Cty. Community College*, 127 Ohio App. 3d 546, 548-49 (Ohio Ct. App. 1998) (quoting *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App. 3d 95, 108 (Ohio Ct. App. 1995). The Court has already determined that a contract existed.

With regard to damages, Defendants argue that Plaintiffs' failed to make a sufficient showing that they incurred damages as a result of the alleged breach. Plaintiffs, however, have submitted a summary of damages they alleged occurred as a result of the breach, and that they served upon Defendants as part of Plaintiffs' initial discovery disclosures. (ECF No. 49-1, Ex. 1.) This summary is sufficient to show that Plaintiffs have incurred damages as a result of the

17

alleged breach.

As to CCDE's and Worthington Schools' obligations under the contract, the parties disagree.  The Placement Agreement, set forth above, requires CCDE to "provide classroom-based services with behavioral support to meet the child's goals as identified by the [IEP]." (ECF No. 42-1 at 51, Ex. 11.)  The IEP, which was developed in April 2005, was to cover the remainder of the 2004-2005 school year and most of the 2005-2006 school year.  The IEP requires CCDE to provide C.B. with a "Preschool teacher & team."  (ECF No. 42-1 at 16, 17, 18.)  It also provides that C.B. was "required to transition to a school age program for the 2006-2007 school year."  (ECF No. 42-1 at 19.)  The parties agree that the school age program to which the IEP refers is kindergarten.  The parties disagree as to what placement the IEP required for C.B. in the 2005-2006 school year prior to kindergarten.

Plaintiffs contend that the testimony of Mary Salmon, Co-Director of the CCDE preschool, shows that it was CCDE's practice to require a child to attend a year of pre-kindergarten classroom instruction before kindergarten.  (ECF No. 47-2 at 13-14) (testifying that to her knowledge C.B. was the only child slated for kindergarten that was not placed in a pre-kindergarten class).  Stacy McConnell, who, as C.B.'s teacher for the 2004-2005 school year, drafted the educational portion of the IEP, testified that the inclusion of the statement "[C.B. is] required to transition to a school age program for the 2006-2007 school year," indicated the IEP team's intent that he be placed in the transition pre-kindergarten classroom for the 2005-2006 school year.  (ECF No. 47-1 at 102.)  Salmon also testified that C.B. was originally assigned to a transition pre-kindergarten classroom in August 2005, but the assignment was changed by CEO Morrison.  When viewing the IEP as a whole, Plaintiffs argue, it is clear that the "Preschool

teacher & team" assignment refers to a pre-kindergarten classroom for the 2005-2006 school year because the IEP requires that C.B. transition to a kindergarten classroom in the 2006-2007 school year. That is, a pre-kindergarten classroom placement for the 2005-2006 was required because if C.B. were not placed in a pre-kindergarten class in the 2005-2006 school year, he could not be placed in a kindergarten class in the 2006-2007 school year, which the IEP required. Further, Plaintiffs contend, the common understanding of the word "preschool" is any schooling that comes before elementary school, which includes preschool and pre-kindergarten classes. *See* Merriam-Webster's Dictionary (defining preschool as "of, relating to, or constituting the period in a child's life that ordinarily precedes attendance at elementary school").

Defendants, however, argue that preschool means only the classroom assignments CCDE designates as "preschool," which does not include pre-kindergarten classes. Defendants explain that neither the term "pre-k" nor the term "pre-kindergarten" are found in the IEP. Further, Defendants posit that CCDE does not require a year of pre-kindergarten placement before kindergarten and that the testimony of their representative to this effect was a misstatement and in disagreement with the school's handbook. Finally, Defendants assert that the testimony upon which Plaintiffs rely is parol evidence and is not admissible to interpret the unambiguous terms of the contract at issue here.

The issue before the Court then is whether the IEP required C.B.'s placement in a preschool or a pre-kindergarten classroom for the 2005-2006 school year. In interpreting a contract, a threshold question that the Court must answer is whether the contract is ambiguous. "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 66, 609

N.E.2d 144, 145 (1993).  If the contract is ambiguous, then extrinsic evidence is admissible to

interpret the contract.  *Statler Arms, Inc. v. APCOA, Inc.*, 92 Ohio Misc. 2d 45; 700 N.E.2d 415,

420 (citing *Carroll Weir Funeral Home, Inc. v. Miller*, 2 Ohio St. 2d 189, 207 N.E.2d 747

(1965)).  If a court finds that the contract is not ambiguous, then extrinsic evidence must not be

considered by the court in determining the meaning of the contract.  *Id.* (citing *Carroll Weir*

*Funeral Home, Inc.*, *supra*).

The Court concludes that the language used in the IEP is ambiguous.  "Language is

ambiguous if the words of a writing are 'susceptible to two or more reasonable interpretations.' "

*Holdren v. Garrett*, No. 09AP-1153, 2011 Ohio App. LEXIS 923, at *15 (citing *Davidson v.*

*Davidson*, No. 98AP-324, 1998 Ohio App. LEXIS 5601 (Ohio Ct. App. Nov. 19, 1998), quoting

*Dorsey v. Contemporary Obstetrics & Gynecology*, 113 Ohio App.3d 75, 84 (Ohio Ct. App.

1996)).  Both Plaintiffs' interpretation and Defendants' interpretation of the IEP are reasonable.

Thus, the Court will consider extrinsic evidence in its interpretation of the IEP.

The Bishops have testified that the IEP team gathered to draft C.B.'s IEP agreed that C.B.

would progress, in August 2005, to a transition pre-kindergarten classroom.  As stated above,

C.B.'s teacher, Stacy McConnell, drafted the educational portion of the IEP and testified that the

inclusion of the statement "[C.B. is] required to transition to a school age program for the

2006-2007 school year," indicated the IEP team's intent that he be placed in the transition pre-K

classroom for the 2005-2006 school year.  (ECF No. 47-1 at 102.)  She further testified that C.B.

had performed satisfactorily in the 2004-2005 school year and was ready to advance to the

transition pre-kindergarten classroom.  Co-Director Salmon testified that C.B. was originally

assigned to the pre-kindergarten classroom and to her knowledge no other children had attended

20

kindergarten without first attending pre-kindergarten.

Defendants contend that the IEP does not indicate that C.B. was slotted for pre-kindergarten placement in the 2005-2006 school year regardless of the fact that the IEP called for kindergarten placement the following year.  Defendants argue that McConnell's testimony was a "misstatement" and that it is not in accordance with CCDE's placement policies as set forth in its school handbook.  Defendants discount Salmon's testimony, arguing that it was Morrison's regular duty to rearrange classroom rosters before they were finalized.  And, Defendants apparently discount the Bishops' testimony as inaccurate and self-serving.

This Court cannot judge the credibility of the individuals' testimony upon which the parties rely.  *Anderson*, 477 U.S. at 255.  If McDonnell's and the Bishops' testimony were to be believed, then the IEP called for C.B.'s placement in a pre-kindergarten classroom and CCDE/Morrison breached the agreement for failing to provide that placement.  If, however, McConnell misspoke as to the intent of the IEP team and/or as to the policies by which the school abided, or if the Bishops' testimony as to the intent of the IEP team were found to be incredible, then the IEP did not provide for C.B.'s placement in a pre-kindergarten classroom and CCDE did not breach the contract.  This determination is one for a jury, not for this Court.

The Court concludes that, when viewing the evidence in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, there is a genuine issue of material fact as to what classroom placement for the 2005-2006 school year C.B.'s IEP required.  Accordingly, the Court **DENIES** Defendants' motion for summary judgment as it relates to Plaintiffs' breach of contract claim.

21

### 4. Contract Recision

Defendants argue that, if there is a contract between CCDE and Worthington Schools, that contract was properly rescinded based on mutual mistake and/or on impossibility of performance.  This Court disagrees.

With regard to mutual mistake, Defendants contend:

> As noted, the IEP specifically calls for a preschool placement.  Neither Worthington nor CCDE would have entered into a contract to implement the IEP if the Plaintiffs did not want it to be implemented.  The parties' belief that the Plaintiffs desired the placement called for in the IEP was a mistake that went to the core and purpose of any contract they would have made for C.B.'s education.

(ECF No. 42 at 9-10.)

As to impossibility of performance, Defendants argue that "Plaintiffs' rejection of the placement provided for in the contract made performance of the contract impossible."  *Id.* at 10.

As Plaintiffs correctly argue, however, Defendants' contentions related to rescission are all predicated on their assumption that the IEP did not call for C.B.'s placement in the pre-kindergarten classroom for the 2005-2006 school year.  As the Court found *supra*, however, there is a genuine issue of material fact as to what classroom placement the IEP required for C.B. for the 2005-2006 school year.  Consequently, Defendants' theories as to recision fail based upon their reliance on a faulty premise.  If a jury determines that the parties contracted for C.B.'s placement in a pre-kindergarten classroom, Defendants' arguments here are of no consequence.  If, however, a jury determines that the parties did not contract for C.B.'s placement in a pre-kindergarten classroom, the jury would then be free to conclude that the contract was properly rescinded based on mutual mistake and/or on impossibility of performance.

**5. Suit by a Third Party Beneficiary for Loss of Benefits when Benefits Refused**

As discussed at length above, Defendants contend that the contract did not provide for C.B.'s placement into a pre-kindergarten classroom.  Defendants rely on that proposition to argue that Plaintiffs were offered contract-conforming placement into a preschool class at CCDE and refused the placement.  Because of this refusal of placement, the argument goes, Plaintiffs cannot now sue for the lost placement.  *Union Savings & Loan, Co. v. Cook*, 127 Ohio St. 26, paragraph 1 of the syllabus 1 (Ohio 1933) (holding that third-party beneficiaries acquire no greater rights than those provided in the contract).  In this same vein, Defendants contend that Plaintiffs' refusal of the preschool classroom placement prohibits them from suing Defendants because Plaintiffs prevented or hindered Defendants' performance, waived their right to performance through voluntary relinquishment of their rights, are estopped from attempting to secure performance, that Plaintiffs defeated the implied condition that they wanted C.B. to attend Oakstone, that they made CCDE's performance impossible, that they committed constructive fraud by leading Defendants to believe that preschool placement was desired, and that their express consent to the contract failed because of their own choice, which prevents any right to sue under the contract.  Defendants' arguments are not well taken.

Again, as explained above, there is a genuine issue of material fact as to whether Plaintiffs were offered a contract-conforming classroom and refused or whether Defendants failed to tender conforming performance.  Consequently, Defendants rely on an inaccurate premise for their argument.  Similar to the Court's explanation related to Defendants' recision arguments, if a jury determines that the parties contracted for C.B.'s placement in a pre-kindergarten classroom, Defendants' arguments here too are of no consequence.  If, however, a

23

jury determines that the parties did not contract for C.B.'s placement in a pre-kindergarten classroom, the jury would then be free to conclude that Plaintiffs' refusal of the conforming classroom placement prevents them from suing for the loss of placement in that classroom.

### 6. Conclusion - Contract Claim

To summarize the Court's conclusions: There is a valid contract between CCDE and Worthington Schools; C.B. was a third party beneficiary of that contract; Plaintiffs sufficiently alleged a breach of that contract; the contract is currently not properly rescinded nor have Plaintiffs waived their right to sue under the contract; and, there is a genuine issue of material fact as to whether the Defendants breached the contract. Accordingly, the Court **DENIES** Defendants' motion for summary judgment as it relates to Plaintiffs' breach of contract claim.

## C. Tortious Interference with Contract

To establish the tort of interference with a contractual relationship, there must be proof that " 'one who, without a privilege to do so, induce[d] or otherwise purposely cause[d] a third party not to enter into, or continue, a business relationship with another[.]' " *Brahim v. Ohio College of Podiatric Medicine*, 99 Ohio App. 3d 479, 489 (1994) (quoting *Juhasz v. Quik Shops, Inc.*, 55 Ohio App. 2d 51, 57 (1977)). "However, '[i]t is axiomatic that the wrongdoer must be a non-party to the contract.' " *Horizons Computer Training and Employability Center, LLC, v. Glover*, No. L-08-1400, 2009 Ohio App. LEXIS 4632, at *15 (Ohio Ct. App. Oct. 16, 2009) (quoting *Castle Hill Holdings, LLC v. Al-Hut, Inc.*, No. 86442, 2006 Ohio App. LEXIS 1239 (Ohio Ct. App. March 23, 2006). "Where two parties are engaged in a business relationship the parties' employees are not regarded as 'outsiders,' or 'third parties' while acting within the scope of their employment duties." *Id.* (citing *Fitzgerald v. Roadway Express, Inc.*, 262 F. Supp.2d

24

849, 859  (N.D. Ohio 2003); *Anderson v. Minter*, 32 Ohio St. 2d 207, 213 (Ohio 1972) ("Where .

. . the act complained of is within the scope of a defendant's duties, a cause of action in tort or

monetary damages does not lie.")).

Here, CEO Morrison is employed by CCDE and is, therefore not a third party capable of

interference with the contractual relationship between CCDE and Worthington Schools unless

she was acting outside of the scope of her employment duties.  In this regard, Plaintiffs contend:

> Rebecca Morrison, as an individual, was not a party to the contract. Rather, she
> signed it in her capacity as CEO.  She then stepped outside her role as CEO and
> prevented CCDE from fulfilling the contract due to her own personal animosity for
> the Bishops.  Mary Salmon testified that the minor plaintiff was originally assigned
> to a transition pre-K classroom in August 2005, but the assignment was changed by
> Dr. Morrison.  Further, she testified that Rebecca Morrison was "thrilled" that the
> Bishops were gone as they had been "a thorn in her side."  Dr. Salmon also related
> that Rebecca Morrison had indicated that "we only had to do this to a couple other
> people and she was going to be really happy."  This testimony clearly indicates that
> Rebecca Morrison was acting out of personal antipathy, rather than in her capacity
> as CEO, in her expulsion of the minor plaintiff.  Thus, there is factual support for a
> claim that Rebecca Morrison stepped outside her role as CEO in expelling the minor
> plaintiff.

(ECF No. 47 at 14-15) (internal citations omitted).

Even accepting Plaintiffs' rendition of the facts as true, *i.e.*, that Morrison expelled C.B.

and that Morrison held personal animosity towards the Bishops, Plaintiffs have not submitted

any evidence nor made any allegations that Morrison acted outside the scope of her employment.

Plaintiffs' reliance on Salmon's testimony that Morrison held personal animosity towards the

Bishops does not take Morrison's actions outside the scope of her employment.  Morrison's

personal feelings about the Bishops does nothing to change the fact that her job duties included

the ability to expel students.  Plaintiffs have not alleged or presented evidence of activity in

which Morrison engaged that was not within the scope of her employment.  *See e.g., Boedeker v.*

25

*Rogers*, 136 Ohio App. 3d 425, 429 (Ohio Ct. App. 1999) ("The claims filed in this lawsuit do not allege Marietta failed to perform his duties under his employment contract, but rather that he engaged in conduct beyond the scope of that employment; that he violated or aided and abetted violation of Ohio insurance law; caused false entries to be made in the books and records of PIE to deceive public officials; withheld records to conceal material facts regarding the company's financial condition; converted monies to himself which belonged to PIE; and breached his duties as an officer by engaging in financial misconduct, excessive payments, and by interfering with the loans made by policyholders to the surplus accounts of PIE.").

The Court concludes that, even when viewing the evidence in the light most favorable to Plaintiffs and making all reasonable inferences in their favor, Plaintiffs have failed to raise a genuine issue of material fact as to whether CEO Morrison tortiously interfered with the contract between CCDE and Worthington Schools. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as it relates to this claim.

### IV. Conclusion

Based on the foregoing, the Court the Court **GRANTS in part and DENIES in part** Defendants' motion for summary judgment on Plaintiffs' state law claims (ECF No. 42) and **GRANTS in part and DENIES in part** Plaintiffs' motion to file a surreply (ECF No. 49). Specifically, the Court:

1. **DENIES** Defendants' motion for summary judgment as it relates to Plaintiffs' breach of contract claim;

2. **GRANTS** Defendants' motion for summary judgment as it relates to Plaintiffs' tortious interference with contract claim;

26

3. **DENIES** Plaintiffs' motion to file a surreply as it relates to Defendants' claim that Plaintiffs failed to allege a breach of contract claim;

4. **GRANTS** Plaintiffs' motion to file a surreply as it relates to Defendants' argument that Plaintiffs failed to make an adequate showing of damages resulting from a contract breach; and,

5. **GRANTS** Plaintiffs' motion to file a surreply as it relates to Defendants' argument that Worthington Schools failed to demand performance of the contract.

The Clerk is **DIRECTED** to detach and file the surreply and the exhibit attached to the surreply.  (ECF Nos. 49-1 and 49-2.)

**IT IS SO ORDERED.**

<u>**/s/ Gregory L. Frost**</u>
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**