**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**COURTLAND BISHOP, et al.,**

    **Plaintiffs,**      **Case No. 2:08-cv-766**
              **JUDGE GREGORY L. FROST**
  **v.**           **Magistrate Judge Mark R. Abel**

**THE CHILDREN'S CENTER FOR**
**DEVELOPMENTAL ENRICHMENT, et al.,**

    **Defendants.**

**OPINION AND ORDER**

This matter is before the Court on:

(1) Defendants' Motion for Reconsideration of Ruling on Contract Claim Addressed in Defendants' First Motion for Partial Summary Judgment ("Defendants' First Motion for Reconsideration") (ECF No. 59), Plaintiffs' Response in Opposition to Defendants' First Motion for Reconsideration (ECF No. 61), Defendants' Reply to Plaintiffs' Opposition to Defendants' First Motion for Reconsideration (ECF No. 69);

(2) Plaintiffs' Motion for Leave to File Sur-Reply to Defendants' Reply to Plaintiffs' Response to Defendants' First Motion for Reconsideration (ECF No. 70), Defendants' Memorandum in Opposition to Plaintiffs' Motion to File Sur-Reply (ECF No. 76);

(3) Plaintiffs' Motion to Strike Defendants' Memorandum in Opposition to Plaintiffs' Motion to File Sur-Reply (ECF No. 81), Defendants' Response to Motion to Strike Response to Motion for Sur-Reply (ECF No. 83);

(4) Defendants' Motion for Reconsideration of Denial of Summary Judgment on

1

Plaintiffs' § 504 Rehabilitation Act Claim ("Defendants' Second Motion for Reconsideration")
(ECF No. 71), Plaintiffs' Response in Opposition to Defendants' Second Motion for
Reconsideration (ECF No. 77), Defendants' Reply to Plaintiffs' Opposition to Defendants'
Second Motion for Reconsideration (ECF No. 78); and

> (5) Plaintiffs' Motion to Strike Defendants' Exhibits 78-1 and 78-2 (ECF No. 82)

> For the reasons that follow, the Court **DENIES** all five motions.

## I. Background

Plaintiffs Courtland and Michelle Bishop and their minor son C.B. reside in the
Worthington, Ohio School District ("Worthington Schools"). In 2002 Worthington Schools
placed C.B. at Oakstone Academy ("Oakstone") after he was identified as a child with
disabilities under the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20
U.S.C. § 1400 *et seq.* Oakstone is a school that educates autistic children in an environment with
typically developing children. C.B.'s typically developing twin was also enrolled at Oakstone.

Defendant the Children's Center for Developmental Enrichment ("CCDE") is a private,
non-profit corporation that is organized under Ohio law for charitable and educational purposes.
CCDE operates Oakstone. Rebecca Morrison, Ph.D., is CCDE's Chief Executive Officer
("CEO") and is named as a defendant in this action in her individual and official capacities.

Oakstone provided educational services to C.B. pursuant to his Individualized Education
Plan ("IEP") until August 2005. On August 29, 2005, the first day of school for the 2005-2006
school year, the Bishops accompanied C.B. to Oakstone. When the Bishops discovered that C.B.
had been placed in an all-day preschool class they refused to allow C.B. to stay in that
classroom. The Bishops believed that the classroom assignment was not in compliance with

C.B.'s IEP.  The Bishops were upset and Mr. Bishop used foul language to express his feelings about the placement.  CEO Morrison was attending to a family emergency that day and was not present at the school.  CCDE Administrator Nanci Morris suggested that the Bishops take C.B. home and wait for CEO Morrison to call.  The Bishops followed Administrator Morris' suggestion.  On August 31, 2005, CEO Morrison left a telephone message at the Bishop's home stating that C.B. "does not have a placement at Oakstone preschool [and] has been referred back to the [Worthington School] district[.]"  (ECF No. 42-1 at 40.)

The parties disagree as to the ramifications of these occurrences.  The Bishops contend that CEO Morrison expelled C.B. after the Bishops refused to place C.B. in a classroom that was not in compliance with C.B.'s IEP.  Defendants claim that C.B.'s classroom assignment was in compliance with the IEP, and when the Bishops refused to place C.B. in that classroom they effectively withdrew C.B. from Oakstone.

## II.  Plaintiffs' Motions

Plaintiffs have filed a motion to file a sur-reply and two motions to strike.

### A.  Standard

This Court's Local Civil Rules permit the filing of a motion and memorandum in support, a memorandum in opposition, and a reply memorandum.  S.D. Ohio Civ. R. 7.2(a)(1), (2).  The rule specifically states that "[n]o additional memoranda beyond those enumerated will be permitted except upon leave of court for good cause shown."  S.D. Ohio Civ. R. 7.2(a)(2).

### B.  Plaintiffs' Motion to File Sur-Reply

Plaintiffs request permission to file a sur-reply "for the purposes of addressing the new cases and arguments presented [by Defendants in their reply memorandum in support of

Defendants' First Motion for Reconsideration] and correcting the mischaracterizations made of Plaintiffs' initial Response."   (ECF No. 70-1.)  Defendants oppose Plaintiffs' request to file a sur-reply, arguing that they made no new arguments in their reply memorandum but merely replied to Plaintiffs' arguments made in their memorandum in opposition.  However, "Defendants request that Plaintiffs' proposed sur-reply be reviewed for purposes of the Court's consideration of the admissions made by Plaintiffs therein[.]"  (ECF No. 76 at 1.)

As to Plaintiffs' arguments, they are not well taken.  While it is true that in their reply memorandum Defendants relied upon several cases to which they had not previously cited, those cases were in support of arguments that had been previously made.  Defendants offered no new arguments in their reply memorandum.  With regard to Plaintiffs' desire to correct mischaracterizations and to explain the new cases upon which Defendants rely, that is not necessary nor does it constitute good cause to file a sur-reply.  This Court is in the business of determining whether the litigants before it appropriately relate the facts, the other parties' arguments, and the propositions that are set forth in case law or whether the litigants mischaracterize those facts, arguments, and propositions.  Thus, the Court **DENIES** Plaintiffs' request to file a sur-reply.

As to Defendants' request, they ask the Court to consider selected portions of Plaintiffs' proposed sur-reply, because in it Plaintiffs made "admissions" that show that Plaintiffs failed to produce sufficient evidence to meet their burden of proof at summary judgment and that Defendants' previously denied motion for summary judgment should therefore be granted.  For example, Defendants argue:

> Though Defendants assert that the record evidence is clear and that there is no evidence to the contrary, Plaintiffs view the evidence in support of their claim that

4

the purported contract for placement called for a pre-k classroom as being equally balanced.   Doc. 70-1, Proposed Sur-Reply, p. 8.   Plaintiffs acknowledge that "perhaps Defendants are correct.  Or perhaps each [party] thought differently from the other" and assert "the possibility that any of these scenarios is the correct one." *Id.*  In recognizing that they have not produced sufficient evidence to meet their burden of proof, Plaintiffs admit that summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

(ECF No. 76 at 12-13.)  Defendants' arguments set forth here and the other similar ones made in its request are not well taken.

Defendants do not understand the nature of Plaintiffs' burden at summary judgment.  In opposing a motion for summary judgment, a party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  A non-moving party need not prove that there is no evidence contrary to his or her position.  Indeed, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  In their proposed sur-reply, Plaintiffs do nothing more than acknowledge that this Court has previously determined that Plaintiffs submitted specific facts showing that there is a genuine issue for trial.  Accordingly, the Court **DENIES** Defendants' request that the Court consider selected portions of Plaintiffs' proposed sur-reply.

## C.  Plaintiffs' Motion to Strike Defendants' Memorandum in Opposition to Plaintiffs' Motion to File Sur-Reply

Plaintiffs filed a motion requesting that the Court strike Defendants' Memorandum in Opposition to Plaintiffs' Motion to File Sur-Reply.  Plaintiffs contend that under Local Rule 7.2,

Defendants have not shown good cause to file their memorandum.  Defendants have opposed this motion.

By the time Plaintiffs filed their motion and Defendants filed their memorandum in opposition, the Court had already determined that Plaintiffs' request to file a sur-reply was not well taken and had already determined that the request Defendants made in their opposition memorandum was not well taken.  The Court declines to revisit its decision to deny Plaintiffs the ability to file a sur-reply based upon any argument presented by Plaintiffs in their motion to strike.  The Court also declines to revisit its decision to deny Defendants' request to consider selected portions of Plaintiffs' proposed sur-reply based upon any argument Defendants present in their opposition memorandum.  Consequently, the Court **DENIES** Plaintiffs' motion.

**D.  Plaintiffs' Motion to Strike Defendants' Exhibits 78-1 and 78-2**

Plaintiffs request that the Court strike two exhibits Defendants attached to their reply memorandum in support of Defendants' Second Motion for Reconsideration.  Specifically, Defendants submitted the exhibits to support one of the three arguments they make in support of reconsideration of this Court's decision.  Plaintiffs argue that the exhibits should not be considered in connection with Defendants' reconsideration motion because they were not presented in connection with Defendants' Second Motion for Summary Judgment and are not newly discovered or obtained evidence.

This Court's Local Rules do require that "all evidence then available shall be discussed in, and submitted no later than, the primary memorandum of the party relying upon such evidence."  S.D. Ohio Civ. R. 7.2(d).  In this instance, however, by the time Plaintiffs filed their motion to strike, the Court had already determined that Defendants' arguments for

reconsideration were not well taken.  Thus, it was not detrimental to Plaintiffs in any way if the Court relied upon these exhibits.  Therefore, the Court **DENIES** Plaintiffs' motion.

### III.  Defendants' Motions for Reconsideration

Plaintiffs allege both federal and state law claims against Defendants.  On January 16, 2011, Defendants filed a motion for summary judgment on Plaintiffs' state law claims for breach of contract and tortious interference with contract claim ("Defendants' First Motion for Summary Judgment").  (ECF No. 42.)  On August 8, 2011, this Court denied Defendants' First Motion for Summary Judgment as it related to Plaintiffs' breach of contract claim and granted Defendants' motion as it related to Plaintiffs' tortious interference with contract claim.  (ECF No. 55.)  In Defendants' First Motion for Reconsideration, Defendants move this Court to reconsider and set aside the portion of its decision that denied summary judgment on Plaintiffs' breach of contract claim.

On June 30, 2011, Defendants moved for summary judgment on Plaintiffs' claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act or Section 504"), the Americans with Disabilities Act of 1991, 42 U.S.C. § 12131 ("ADA"), the IDEIA, and the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983").  On September 15, 2011, this Court granted Defendants' Second Motion for Summary Judgment as it related to Plaintiffs' claims filed under the ADA, Section 1983 and Plaintiffs' punitive damages claim for alleged violations of Section 504 and denied the motion as it related to Plaintiffs' disability discrimination claim filed under Section 504 and Plaintiffs' claim for compensatory damages for alleged violations of Section 504.  In Defendants' Second Motion for Reconsideration, they move the Court to reconsider and set aside its ruling denying summary judgment on Plaintiffs'

7

disability discrimination claim filed under Section 504.

## A. Standard for Reconsideration

Although the Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders, the authority for a district court to hear such motions is found in both the common law and in Rule 54(b) of the Federal Rules of Civil Procedure. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004). A district court's authority to reconsider its previous orders has been recognized to afford such relief as justice requires. *Id.* 952. Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or, (3) a need to correct a clear error or prevent manifest injustice. *Id.* (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)). Defendants here argue that the Court should grant their motions for reconsideration to correct clear errors made by the Court and/or to prevent manifest injustice.

## B. Defendants' First Motion for Reconsideration

Defendants argue that this Court made the following four clear errors in its decision denying them summary judgment on Plaintiffs' breach of contract claim: Determining that (1) there is a dispute between the parties to the contract as to its meaning, (2) a contract existed between CCDE and Worthington Schools, (3) Defendants failed to properly raise the issue of demanding performance of the contract in their motion for summary judgment, and (4) Plaintiffs' properly pleaded a breach of contract claim in their amended complaint.

### 1. Dispute Between Parties to the Contract

Defendants contend that the Court erred because it allowed a third party beneficiary,

8

C.B., to determine the meaning of the terms of the contract under which he was to benefit. Defendants sets forth three arguments to support this contention: (a) that there is no material dispute between the parties to the contract about the meaning of the word "preschool," (b) that this is a contract dispute, not IDEIA litigation, and (c) that the Court improperly considered parol evidence.

### a.  Material Dispute About the Meaning of the Word "Preschool"

Defendants argue that "[t]he Court erred in holding that a dispute between the parties to this lawsuit about the meaning of the word preschool is material.  Third party beneficiaries do not determine the meaning of the contract terms under which they are to benefit."  (ECF No. 59 at 4.)  Specifically, Defendants contend:

> The Court found that there is a material dispute between Defendants and Plaintiffs as to the meaning of the word <u>preschool</u>, Doc. 55, Decision. p. 18-21, and that it would engage in "interpretation of the IEP." *Id.* at 20.  In so deciding, the Court "made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension."  *Barxton v. Scott*, 905 F. Supp. 455, 457 (N.D. Ohio 1995).  The issue before the court is one of contract. Interpretation of the IEP is neither relevant nor required for resolution of Plaintiffs' contract claim. There is no dispute between the <u>parties to the contract</u> as to its meaning and thus no basis for interpretation.
> . . . .
> The Court then treated the perceived dispute between CCDE and the third party beneficiaries as if it were a dispute between the parties <u>to the contract</u>.  But it is not. A third party beneficiary's rights arise from the terms of the contact.  He has no contract rights until the contract exists.  *Union Savings & Loan, Co. v. Cook*, 127 Ohio St. 26, syllabus 1, p. 33 (1933). Doc. 42, Motion, p. 5-6.  A third party beneficiary does not decide the meaning of the terms of the contract.  Thus, the dispute identified by the Court is not material.

*Id.* at 3, 4 (emphases in original).  Defendants' arguments are not well taken.

First, Defendants' contention that interpretation of the IEP is neither relevant nor required for resolution of Plaintiffs' contract claim is simply incorrect.  The IEP was specifically

9

incorporated in the contract between CCDE and Worthington Schools: "Placement will provide classroom-based services with behavioral support to meet the child's goals as identified by the Individual Education Plan."  (ECF No. 42-1 at 51, Ex. 11.)  Plaintiffs allege that the contract between CCDE and Worthington Schools was breached because CCDE failed to provide the classroom-based services with behavioral support to meet the C.B.'s goals as identified by the IEP.  The Court, therefore, must determine what the IEP identified as goals that the classroom-based services with behavioral support were to meet.

Second, the Court agrees with the legal proposition that C.B.'s rights arise from the contract and that he has no greater rights than do the parties to the contract, including no right to relief under the contract if no contract was formed.  However, in its decision on summary judgment, and again below, the Court explains why it found that a contract was formed between CCDE and Worthington Schools for the benefit of C.B.  Thus, C.B. is entitled to relief under that contract if it is found to have been breached.

Third, this Court disagrees with Defendants' position that there is no dispute as to the meaning of the contract by the parties to the contract.  The evidence related to Worthington Schools in that regard that is before the Court is that Worthington Schools did not sue for breach of contract and the testimony of Worthington's Director of Special Education, Lynne Hamelberg, Ph.D.:

> Q. Do you recall what the agreement was with respect to the specific classroom that [C.B.] would be attending at Oakstone Academy in the fall of 2005?
>
> A. I can recall the discussion.  I wasn't as intimately familiar with how they structure their placements until today's meeting.  I can recall discussing transition because he would be transitioning.  He would be turning six, and we knew – the following year, and we would be looking at a school age evaluation.  My recollection is that there was a lot of discussion.  There was a goal here related to the transition, but that he

10

would be involved in the preschool class that would be involved with, you know, preparing for transition for those kids that would be going into kindergarten.

(ECF 47-1 at 97-98). While Defendants interpret this testimony as showing Dr. Hamelberg's agreement that assignment to any preschool classroom would fulfill the requirements of the IEP, Plaintiffs submit that Dr. Hamelberg's reference to "*the* preschool class that would be involved with . . . preparing for transition for those kids that would be going into kindergarten" indicates her understanding that a particular transition preschool classroom, *i.e.*, the pre-K classroom, was envisioned by the participants in the IEP meeting who drafted the IEP. Thus, as Plaintiffs correctly point out, Worthington Schools' understanding of the contract terms is not necessarily in accord with the interpretation advanced by Defendants. Moreover, simply because Worthington Schools did not sue for breach of contract does not mean that they had no right to do so.

The evidence before the Court as to the intention of CCDE is also not as clear as Defendants claim it to be. That is, CEO Morrison's understanding of the contract, while relevant, is not the only relevant testimony in this regard. CEO Morrison admits that she was not involved in developing the IEP for C.B. Instead, it was the Bishops, Dr. Hamelberg on behalf of Worthington Schools, and Stacy McConnell on behalf of Oakstone that were present at the IEP meeting and were signatories of the IEP. What these individuals intended the IEP to require is relevant to determining the meaning of this ambiguous contract.

Fourth, and last, even if there is no dispute as to the meaning of the contract between Worthington Schools and CCDE, C.B. still has the right to sue for a breach of the contract. Defendants repeatedly contend that C.B. as a third party beneficiary has no greater rights than the parties to the contract. While this is a correct statement of the law, Defendants' application

of this legal doctrine is faulty.  That is, Defendants contend that because CCDE or Worthington Schools did not sue on the contract, neither can C.B.  However, as parties to the contract, Worthington Schools and CCDE have the right to sue on the contract for conduct that either perceives to be a breach.  As a third party beneficiary, C.B. derives that same right, *i.e.*, to sue for conduct he perceives to be a breach of the contract.  Of course, like the circumstances here, it is usual for the party being sued by the third party beneficiary (here CCDE) to disagree with the third party beneficiary's interpretation of the contract.

In that same vein, the relief for a breach of the contract that is available to Worthington Schools or CCDE is the only relief that is available to C.B.  C.B. in that regard has no greater rights than Worthington or CCDE.  Similarly, C.B. has no lesser rights either.

Moreover, even if the parties to the contract do not believe that a breach occurred, that does not alter a third party beneficiary's rights sue for breach.  Indeed, permitting a third party beneficiary to sue in his or her own right is at least partially based upon the assumption that the parties to the contract have not acted to protect the beneficiary's rights thereunder.  Cases interpreting Ohio law provide numerous examples of this maxim.  For example, in *Divine Tower Int'l Corp. v. Kegler, Brown, Hill & Ritter Co., L.P.A.*, Case Nos. 2:04-cv-494, 2:04-cv-584, 2009 U.S. Dist. LEXIS 26088 (S.D. Ohio Mar. 27, 2009), the plaintiffs were parties to a contract to which the defendant was the intended third party beneficiary.  The third party beneficiary defendant filed counterclaims against the plaintiffs for the plaintiffs' breach of that contract.  The Honorable James L. Graham, like this Court in its decision on summary judgment, determined that the parties to the contract breached the contract and that the third party beneficiary defendant was entitled to sue on the breach and to be awarded damages for that breach.  *Id.* at

12

*28-29 ("Accordingly, the court finds that [third party beneficiary] Kegler Brown has demonstrated that it is entitled to damages in the amount of $ 43,736.25.").  It was not relevant to Judge Graham's determination whether the parties to the contract believed that the contract was breached or not.  In the instant action too, it is not relevant whether the parties to the contract believe that the contract was breached or not.  C.B. has the same rights to sue for conduct he perceives to be a breach as Worthington Schools and CCDE possess.

Perhaps Defendants are confused about the nature of C.B.'s status as an intended third party beneficiary and are relying on law related to incidental third party beneficiaries.  In Ohio, a third party beneficiary *is prevented* from suing on what it perceives to be a breach of contract if it is an incidental third party beneficiary.  The *Divine Tower* court explained:

> In determining when a third party is an intended beneficiary, as opposed to an incidental beneficiary, the Ohio Supreme Court has referred to the Restatement of the Law of Contracts.  *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 40, 521 N.E.2d 780, 784 (Ohio 1988).  "[A] beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."  *Id.* (quoting Restatement of the Law 2d, Contracts, § 302 (1981 )).  *See also Norfolk & Western Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980).

*Divine Tower*, 2009 U.S. Dist. LEXIS 26088, at 19.  *See also Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 863 (6th Cir. 2001) ("under Ohio law, 'only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract.'  *Mergenthal v. Star Banc Corp.*, 122 Ohio App. 3d 100 (Ohio Ct. App. 1997)"); *Kuempel Co. v. Dayton Malleable, Inc.*, No. 76AP-893, 1977 Ohio App. LEXIS 8937, *5 (Ohio Ct. App. June 14, 1977) ("The law of Ohio is in accordance with the general rule that third party beneficiary contracts are not so far extended as to give to a third person who is only indirectly and incidentally benefitted

by the contract the right to sue upon it.").

In the case *sub judice*, there is no dispute that C.B. was the intended beneficiary of the contract between CCDE and Worthington Schools.  Therefore, as the Sixth Circuit and this Division of this Court have recognized, under Ohio law an intended third party beneficiary of a contract "may bring an action on [the] contract."  *Reisenfeld & Co.*, 277 F.3d at 863.

### b.  IDEIA

Defendants next argue that because "[t]he Court clearly erred when it turned the contract claim into IDEIA litigation."  (ECF No. 59 at 9.)   Specifically, Defendants contend:

> The question of whether the IEP, by specifying a preschool placement rather than a pre-k placement, was appropriate is not a contract dispute.  It is a dispute under the IDEIA and it is one that Plaintiffs have already had their opportunity to litigate with the Worthington School District.  Defendants as private school providers are not responsible for the contents of the IEP.  That responsibility falls by law, 34 CFR 300.325(c), to the Worthington School District.

(ECF No. 59 at 6, 9-10.)  Defendants' arguments are not well taken.

The Court did not determine whether a preschool or a pre-k placement was *appropriate*.  Instead, it determined that the contract between Worthington Schools and CCDE specifically incorporated the IEP.  It next determined that the IEP was ambiguous on its face and that there were genuine issues of material fact as to what the IEP required.  The Court in no way turned this litigation into IDEIA litigation.

### c.  Parol Evidence

The last argument Defendants set forth to support their claim that the Court erred because it allowed a third party beneficiary to determine the meaning of the terms of the contract under which he was to benefit, is that the Court improperly relied on parol evidence to find ambiguity in the contract.  Defendants contend:

14

> The Court found Defendants' position that the purported contract by its language called for a preschool classroom reasonable. The Court also found based on extrinsic evidence offered by Plaintiffs over Defendants' objection, that their claim, that the IEP, though it says preschool, actually required a pre-k placement, is "reasonable." The Court then said these two reasonable views demonstrated ambiguity in the contract. Here the Court clearly erred because it relied entirely on parol evidence from persons not party to the contract to find ambiguity and overlooked the fact that the parties to the contract are not in dispute and in fact agree that there was no agreement for a pre-K class.

(ECF No. 59 at 8.)  Defendants' arguments are not well taken.

Initially, the Court notes that it did not rely on extrinsic evidence to determine that the contract was ambiguous.  The Court indicated:

> The IEP, which was developed in April 2005, was to cover the remainder of the 2004-2005 school year and most of the 2005-2006 school year.  The IEP requires CCDE to provide C.B. with a "Preschool teacher & team." (ECF No. 42-1 at 16, 17, 18.)  It also provides that C.B. was "required to transition to a school age program for the 2006-2007 school year."  (ECF No. 42-1 at 19.)

(ECF No. 55 at 18.)  The Court explained:

> In interpreting a contract, a threshold question that the Court must answer is whether the contract is ambiguous.  "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 66, 609 19N.E.2d 144, 145 (1993).  If the contract is ambiguous, then extrinsic evidence is admissible to interpret the contract.  *Statler Arms, Inc. v. APCOA, Inc.*, 92 Ohio Misc. 2d 45; 700 N.E.2d 415, 420 (citing *Carroll Weir Funeral Home, Inc. v. Miller*, 2 Ohio St. 2d 189, 207 N.E.2d 747 (1965)).  If a court finds that the contract is not ambiguous, then extrinsic evidence must not be considered by the court in determining the meaning of the contract.  *Id.* (citing *Carroll Weir Funeral Home, Inc.*, *supra*).

(ECF No. 55 at 19-20.)

The Court then determined IEP was ambiguous on its face.  The Court did, however, review the interpretations given the language by Defendants and by Plaintiffs, finding that each was reasonable, which raised genuine issues of material fact that defeated summary judgment. While Plaintiffs did offer evidence extrinsic to argue that their interpretation was the correct one,

that was not improper.  Nor was it improper for this Court to consider that parol evidence.  When a court is tasked with interpreting ambiguous contractual language, extrinsic evidence may be relied upon.

### 2. Contract between CCDE and Worthington Schools

Defendants offer a second reason that this Court should reconsider and set aside its decision denying summary judgment to Defendants on Plaintiffs' breach of contract claim. Defendants argue that this Court "either overlooked the disputed and material issue of Worthington's delivery of acceptance [of the contract] or erred when it made credibility determinations to decide the issue."  (ECF No. 59 at 10.)  Specifically, Defendants claim that by determining that a valid contract existed between CCDE and Worthington Schools, the Court made a decision that CEO Morrison's testimony that there was no contract was not credible. Defendants' arguments are not well taken.

In its decision on summary judgment, this Court engaged in a lengthy analysis of whether there was a contract formed between Worthington and CCDE, addressing each of Defendants' arguments, *i.e.*, that no contract was formed because there was no acceptance, there was no consideration, there was no manifestation of mutual assent, and that there was no condition precedent that was not met.  (ECF No. 55 at 11-22.)  The Court determined as a matter of law that a contract between CCDE and Worthington Schools had been formed.  Nowhere in its analysis did the Court make any determination as to the credibility of CEO Morrison's testimony regarding the facts.  However, it is not for a defendant to determine whether the legal elements of contract formation were met.  Instead, the parties submit testimony as to what occurred and a court must determine whether, based on these facts, a contract was formed.

16

With regard to Defendants' specific argument that the Court improperly analyzed the issue of Worthington School's "delivery of acceptance" of the contract, the Court explained, *inter alia*:

> In the instant action, there was no specifically prescribed way of acceptance, much less a requirement that Worthington Schools' acceptance could be made only by performance. As Plaintiffs correctly point out, the term of the contract listed at number 4 that indicates that tuition is payable upon receipt is simply a term of the contract similar to those terms listed under numbers 1, 2, 3, and 5. It is not a prescribed manner of acceptance of the contract. "Unless otherwise indicated by the language or the circumstances, an offer invites acceptance in any manner reasonable in the circumstances." Restatement (Second) of Contracts, § 30(2) (1981). Signature of the parties' representative was certainly a reasonable manner of acceptance here. Indeed, the Agreement for Placement appears to have contemplated that manner of acceptance.

(ECF No. 55 at 13) (citing to the Restatement of the Law of Contracts for "examples of contract language prescribing a mode of acceptance: 'I must receive your acceptance by return mail.'; 'Send your office boy around with an answer to this by twelve o'clock.'; 'You must accept this, if at all, in person at my office at ten o'clock tomorrow.' "). Consequently, the Court did not overlook Defendants' argument related to "delivery of acceptance."

### 3. Demanding Performance of the Contract

In the same Opinion and Order that addressed Defendants' First Motion for Summary Judgment, the Court also ruled upon a motion to file a sur-reply that was filed by Plaintiffs. In that part of the decision, the Court found that Defendants had raised in its reply a new issue regarding whether Worthington Schools had demanded performance of the contract. The Court, therefore, did not address Defendants' argument. Defendants now argue that "[t]he Court made clear error when it found that Worthington's failure to seek enforcement of the purported contract was not addressed in the motion for summary judgment." (ECF No. 59 at 11.) This

Court disagrees.  However, even if it had erred, the error was harmless because there is no

requirement that Worthington Schools demand performance of the contract between it and

CCDE in order for C.B., as the third party beneficiary to that contract, to bring suit.

> Defendants argue:
>
> Plaintiffs have no basis for bringing a lawsuit if Worthington had no basis for
> bringing suit.  A third party beneficiary's rights derive solely from the contract and
> are no greater than those of the contracting parties.  *Union Savings & Loan, Co. v.*
> *Cook*, 127 Ohio St. 26, 33 (1933).  Any defense available to the parties may be raised
> against the third party beneficiary.  *In Re: Edward M. Johnson and Associates, Inc.,*
> *v. Johnson*, 845 F.2d 1395, 1399 (6th Cir. 1988).  Without demand, neither
> Worthington nor Plaintiffs have a cause of action.

(ECF No. 69 at 25) (citing to cases on pages 10-14 of motion).  This Court, again, disagrees.

While it is true that any defense available to the parties may be raised against the third

party beneficiary, the defense Defendants offer is one without merit, *i.e.*, that Worthington

Schools was required to demand performance of the contract before it could sue for breach of

that contract.  The cases Defendants cite as support their contention do not impose such a

requirement, but instead deal with the necessity of a demand prior to bringing suit for specific

performance of a contract or a forfeiture.  *See Smith v. Whitbeck*, 13 Ohio St. 471, paragraph one

of the syllabus (1862) ("In order to show a forfeiture of an unexpired term of a leasehold estate,

for non-payment of rent, the lessor must prove demand of payment of the lessee when due.");

*George Wiedemann Brewing Co. v. Maxwell*, 78 Ohio St. 54 (1908) (suit seeking specific

performance of an option contract, not a suit for breach); *Dell v. Bradburn*, 2 Ohio App.3d 139

(Ohio Ct. App. 1981) (suit for specific performance, not suit for breach); *Williams v. Shenefield*,

No. CA-680, 1988 Ohio App. LEXIS 3168 (Ohio Ct. App. July 28, 1988) (the buyer's failure to

demand or protest the seller's breaches meant buyer waived specific performance).

As to the final case upon which Defendants rely, *Midwest Specialties Inc. v. Firestone Tire & Rubber, Co.*, 42 Ohio App.3d 6, 13 (9th App. Dist., 1988), it states: "A party complaining of a breach of contract is not required to demand performance from the breaching party prior to instituting suit where the obligation to perform is complete and unconditional." This proposition is, obviously, contrary to Defendants' stated position. Defendants, however, attempt to distinguish this case by arguing that, in the instant action, the obligation to perform was not complete and unconditional and, therefore, the complaining party was required to demand performance. This Court disagrees. For all of the same reasons set forth in its decision on summary judgment and *supra*, the Court concludes that there was a binding contract formed between the parties. That contract was complete and unconditional.

Consequently, even if the Court had mistakenly concluded that Defendants had raised the demand issue for the first time in their reply brief, that error would be of no consequence.

### 4. Pleading Sufficiency

Defendants offer a final argument in support their request for reconsideration and setting aside the Court's decision denying summary judgment to Defendants on Plaintiffs' breach of contract claim. Defendants argue that "[t]he Court made a clear error when it decided to permit Plaintiffs to proceed on a breach of contract claim that was not pleaded in their amended complaint and upon which they presented no admissible evidence." (ECF No. 59 at 13.) Specifically, Defendants contend:

> [T]he Court found that allegations outside Plaintiffs' contract claim but in other parts of the amended complaint sufficiently alleged breach. The allegations found by the Court either state no basis for the breach or allege that the beach is based upon the "expulsion" of C.B. by Dr. Morrison. Doc. 55, Dec., p. 10.
>
> Nowhere in the Amended Complaint is there any allegation that a preschool

19

placement breached the purported contract.

*Id.* at 13-14.  Consequently, Defendants conclude that the Court "has made a decision outside the

adversarial issues presented to the Court by the parties."  *Id.* at 14 (citing *Barxton v. Scott*, 905 F.

Supp. 455, 457 (N.D. Ohio 1995)).  Defendants' arguments are not well taken.

In its decision, the Court found:

> In the amended complaint, Plaintiffs allege that there was a contract between
> Worthington Schools and CCDE for educational services for C.B. for the 2005-2006
> school year and that CEO Morrison expelled C.B. before the services were rendered,
> *i.e.*, CCDE/Morrison breached the contact.  Plaintiffs further allege that C.B. "was
> a third party beneficiary of said contract for education memorialized by the contract
> and [the IEP]."  (ECF No. 34 at ¶ 34.)  Moreover, under the tortious interference
> claim, Plaintiffs specifically refer to their breach of contract claim alleging that
> "Defendant Rebecca Morrison deliberately and intentionally breached said contract
> by expelling the minor plaintiff from CCDE" and that she had a duty to ensure the
> contract was not breached.  (ECF No. 34 at ¶¶ 37, 38.)  Finally, in their prayer for
> relief, Plaintiffs again refer to the breach of contract claim, stating that they request
> the Court to declare that the actions of CCDE and Morrison were in breach of the
> contract between CCDE and Worthington Schools.

> These allegations easily meet the requirement that the complaint contain "a short and
> plain statement of the claim showing that the pleader is entitled to relief" Fed. R.
> Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's
> claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47
> (1957) (overruled in nonrelevant part by *Atlantic Corp. v. Twombly*, 550 U.S. 544,
> 570 (2007)).

(ECF No. 55 at 11.)

First, Defendants take issue with the fact that the Court considered the amended

complaint in its entirety, not just the specific paragraphs that were placed under the heading

"breach of contract."  The Court, however, appropriately viewed the amended complaint in its

entirety.  Each section of the amended complaint realleged and incorporated by reference each

and every paragraph set out previously in the document.

Second, Defendants complain that nowhere in the amended complaint was there any

20

specific statement that the breach of contract claim was at least partially based upon Plaintiffs'

belief that a preschool placement breached the purported contract.  Plaintiffs, however, are not

required under Rule 8 to allege each specific fact that supports their claims.  Instead, as just

quoted above, Rule 8 requires "a short and plain statement of the claim showing that the pleader

is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Plaintiffs allegations easily meet this standard.

Plaintiffs alleged that CEO Morrison was aware of the IEP and its provisions and that she

changed the placement.  Plaintiffs also allege that CEO Morrison "was fully aware of the

existence of a contract to provide educational services to the minor plaintiff and its terms and

conditions memorialized by said IEP.  As CEO and Director, she had a duty to ensure that said

contract was not breached by any agent or employee of CCDE, including herself."  (ECF No. 34

at ¶ 36.)  Moreover, the "expulsion" about which Plaintiffs complain was based upon Plaintiffs'

refusal to allow C.B. to be placed in a preschool class that they believed was not in compliance

with C.B.'s IEP.  These allegation gave Defendants fair notice of Plaintiffs' breach of contract

claim and the grounds upon which it rests.

**C.  Defendants' Second Motion for Reconsideration**

In Defendants' Second Motion for Reconsideration, Defendants move this Court to

reconsider and set aside its ruling denying summary judgment on Plaintiffs' Rehabilitation Act

claim.  Defendants contend that reconsideration is necessary in order to correct clear error and to

avoid manifest injustice.  Defendants argue that in its decision, the Court made three errors

relating to:  (1) Section 504's requirement that a student be excluded solely on the basis of his or

her disability, (2) the appropriate standard to be applied at summary judgment, and (3) the

provisions of Section 504 related to a student's right to a free and appropriate public education

("FAPE").

### 1. Exclusion Solely on the Basis of Disability

Defendants argue that the element of the Rehabilitation Act that requires that C.B. was discriminated against "solely because of his or her handicap" cannot be met if the Court had accepted Defendants' argument  "that CCDE understood that the Bishops had withdrawn C.B. and that was the reason C.B. stopped attending Oakstone Academy."  (ECF No. 71 at 4) (emphasis in original).  Specifically, Defendants argue:

> [T]the Court apparently overlooked Defendant's argument, that in light of the undisputed evidence that CCDE understood that C.B. had been withdrawn from the school by his parents and filled the vacated place based on that understanding, Plaintiffs cannot establish the element of their §504 claim that C.B. was excluded solely on the basis of his disability.  This is true even if Plaintiffs did not intend to withdraw C.B.  CCDE's act of filling the vacated place based on its understanding that they had, was simply common sense and normal educational practice.
>
> . . . .
> Defendants in seeking summary judgment argued for a number of reasons that there was no genuine issue of material fact on the third element - exclusion due solely on the basis of disability.  The Court rejected several of the arguments presented but did not address the argument that the evidence overwhelmingly shows that CCDE understood that the Bishops had withdrawn C.B. and that understanding was the reason C.B. stopped attending Oakstone Academy.
> . . . .
> The facts show that CCDE and Dr. Morrison understood that the Bishops had withdrawn C.B.  School administrator Nanci Morris who dealt with the Bishops that first day of school understood that they had withdrawn C.B.  This is a different question than whether the Bishops said and/or intended to withdraw C.B. (which is the question the Court addressed and found to be in dispute).

*Id.* at 2, 4, 6 (emphases in original).  *See also* (ECF No. 78 at 12) ("What CCDE understood [the Bishops'] intentions to be was conveyed by the Bishops' words and actions.  It was reasonable to believe that the Bishops had withdrawn C.B. based on the facts available.") (emphasis in original).  Defendants' arguments are not well taken.

Administrator Morris' affidavit does not state that she believed that the Bishops had withdrawn C.B. from Oakstone permanently.  It indicates that she was told by the Bishops that they would not place C.B. in a preschool classroom because they believed his IEP called for a pre-k placement and that Morris repeatedly suggested that C.B. go to the preschool classroom and wait until CEO Morrison called them before taking him out of the school.  Administrator Morris does not indicate whether she believed the Bishops were withdrawing C.B. from Oakstone permanently or whether they were taking him out of the school that day.  It further indicates that when she spoke with Mr. Bishop a few days later and he told her that he did not intend to remove C.B. permanently from Oakstone, she "reminded him that on Monday he had adamantly refused to accept C[.B.]'s placement."  (ECF No. 42-1 at 44.)  Refusing placement in a particular classroom is not the same as withdrawing C.B. from Oakstone permanently.

Moreover, and more importantly, the Court is not convinced that Plaintiffs are prevented from establishing that Defendants discriminated against C.B. because Defendants "believed" that C.B. had been withdrawn from Oakstone.  While the ultimate discriminatory event about which Plaintiffs complain is C.B.'s "expulsion," Plaintiffs have presented evidence and argument that CEO Morrison chose to place C.B. in a classroom that was not in accordance with his IEP because she wanted to ultimately have him leave Oakstone.  Thus, Plaintiffs claim that C.B. was discriminated against by being placed in the preschool class by CEO Morrison, who intended the placement to ultimately rid Oakstone of C.B.'s presence there.  Plaintiffs claim that the reason CEO Morrison wanted C.B. to leave Oakstone is because he was autistic.[1]  Thus, even if

---

[1]The Court does not find it incongruent to find that the CEO of a school that educates autistic children could discriminate on the basis of the child's autism.  Autism is a broad spectrum disorder and certainly some autistic children are more difficult to educate than others.

Administrator Morris had testified that she believed the Bishops' removal of C.B. from Oakstone that day meant that C.B. was withdrawn from Oakstone permanently, it still does not require this Court to reconsider its previous conclusion that Plaintiffs raised genuine issues of material fact as to whether C.B. was discriminated against solely because of his autism.

### 2. Standard at Summary Judgment

Defendants argue that "the Court failed to apply the proper legal standards in deciding that Plaintiffs had met their burden to demonstrate that there is a genuine issue of material fact in dispute. The Court failed to consider the record as a whole and gave credence to implausible inferences." (ECF No. 71 at 2.) Defendants here merely disagree with the Court's application of the summary judgment standard. This, however, is an insufficient reason to move for reconsideration. Indeed, most, if not all, litigants on the losing end of this Court's decisions likely believe that the Court did not view the record and/or apply the standard properly.

### 3. FAPE Provisions Under Section 504 of the Rehabilitation Act

The final reason Defendants ask for reconsideration of this Court's decision denying summary judgment to Defendants on Plaintiffs' Rehabilitation Act claim is because

> the Court's decision holding that the FAPE provisions of §504 are applicable to a private preschool is in error. The Court denied summary judgment holding that Plaintiffs' argument that, though a private preschool is not responsible for FAPE under the IDEIA, it may be held responsible under §504. Under the law, private preschools are not responsible for FAPE under §504. The FAPE provisions apply only to public elementary and secondary schools. 34 CFR §104.39. This issue was raised in Defendants' Motion for Summary Judgment at Doc. 58-1, Motion, p. 14.

(ECF No. 71 at 1.) Defendants' arguments are not well taken.

Initially, the Court notes that nowhere in Defendants' Second Motion for Summary Judgment did they make this argument. Defendants refer the Court to page 14 of their motion

24

for this proposition, where Defendants support their argument that "*res judicata* bars Plaintiffs'

claim that C.B. was denied a free and appropriate public education under § 504":

> The administrative hearing officers at the district level and on review held that
> CCDE is not responsible for FAPE. R. 12-5, SE 1994-2007 Decision; R. 12-2, 12-3,
> 12-4, 12-6, 12-7, SLR 1994-2007 Decisions.  Moreover, not only was this issue
> resolved in the prior proceedings and thus barred by *res judicata* and the law of the
> case but also, it was resolved correctly as private schools are not subject to the
> regulations under §504 that require the provision of FAPE. 34 C.F.R. 104.39. Only
> public schools incur that obligation. 34 C.F.R. 104.33. The factual and legal bases
> for this claim have already been settled and are *res judicata* in this matter.  Summary
> judgment should be granted.

(ECF No. 58-1 at 13.)

Nowhere in their motion or in their reply brief in support of their motion do Defendants

argue that CCDE is not responsible for a FAPE because it is a preschool.  Instead, Defendants'

argument at summary judgment was that Defendants did not deny C.B. a FAPE because, first,

there was no contract to provide C.B. with a FAPE and, second, "to establish an education based

claim under §504, the Plaintiffs must show 'something more' than a violation of the IDEIA."  *Id.*

at 11.

Because Defendants did not move for summary judgment on the grounds that as a

preschool, Section 504 does not apply to it, a motion for reconsideration is not the appropriate

means to bring this issue before the Court.  The issue, however, is a dispositive one.

Consequently, the Court shall accept Defendants' argument made in its motion for

reconsideration and its reply brief as a separate motion for summary judgment on this issue only

and will accept Plaintiffs' arguments made in its opposition memorandum as an opposition to

that motion.  The Court will also accept one additional brief from each party as a supplement to

their already submitted arguments.  Those supplemental briefs are to be filed on November 21,

2011 by 12:00 p.m.

## IV. Conclusion

For the reasons set forth above, the Court:

(1) **DENIES** Defendants' First Motion for Reconsideration (ECF No. 59);

(2) **DENIES** Plaintiffs' Motion for Leave to File Sur-Reply to Defendants' Reply to Plaintiffs' Response to Defendants' First Motion for Reconsideration (ECF No. 70);

(3) **DENIES** Plaintiffs' Motion to Strike Defendants' Memorandum in Opposition to Plaintiffs' Motion to File Sur-Reply (ECF No. 81);

(4) **DENIES** Defendants' Second Motion for Reconsideration (ECF No. 71);

(5) **DENIES** Plaintiffs' Motion to Strike Defendants' Exhibits 78-1 and 78-2 (ECF No. 82); and,

(6) **CONSTRUES** the arguments made by Defendants in their Second Motion for Reconsideration and their reply in support of that motion relating to whether Section 504 of the Rehabilitation Act applies to private preschools as a motion for summary judgment on that issue. The Court also accepts Plaintiffs' arguments in opposition as a memorandum in opposition to that motion. The parties are **DIRECTED** to each file a supplemental brief supporting their arguments *on this issue only* on November 21, 2011 by 12:00 p.m.

**IT IS SO ORDERED.**

**/s/ Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**