UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

COURTLAND BISHOP, et al.,

       Plaintiffs,                          Case No. 2:08-cv-766
                                                 JUDGE GREGORY L. FROST
      v.                                    Magistrate Judge Mark R. Abel

THE CHILDREN'S CENTER FOR
DEVELOPMENTAL ENRICHMENT, et al.,

       Defendants.

**OPINION AND ORDER**

This matter is before the Court on Defendants' motion for summary judgment on Plaintiffs' discrimination claim ("Defendants' Third Motion for Summary Judgment") (ECF No. 88) and Plaintiffs' memorandum in opposition to Defendants' motion (ECF No. 87). For the reasons that follow, the Court **DENIES** Defendants' motion.

**I.  Background**

Plaintiffs Courtland and Michelle Bishop and their minor son C.B. reside in the Worthington, Ohio School District ("Worthington Schools"). In 2002 Worthington Schools placed C.B. at Oakstone Academy ("Oakstone") after he was identified as a child with disabilities under the Individuals with Disabilities Education Improvement Act, 20 U.S.C. § 1400 *et seq.* Oakstone is a school that educates autistic children in an environment with typically developing children. C.B.'s typically developing twin was also enrolled at Oakstone.

Defendant the Children's Center for Developmental Enrichment ("CCDE") is a private, non-profit corporation that is organized under Ohio law for charitable and educational purposes.

CCDE operates Oakstone.  Rebecca Morrison, Ph.D., is CCDE's Chief Executive Officer ("CEO") and is named as a defendant in this action in her individual and official capacities.

Oakstone provided educational services to C.B. pursuant to his Individualized Education Plan ("IEP") until August 2005.  On August 29, 2005, the first day of school for the 2005-2006 school year, the Bishops accompanied C.B. to Oakstone.  When the Bishops discovered that C.B. had been placed in an all-day preschool class they refused to allow C.B. to stay in that classroom.  The Bishops believed that the classroom assignment was not in compliance with C.B.'s IEP.  CCDE Administrator Nanci Morris suggested that the Bishops take C.B. home and wait for CEO Morrison to telephone them regarding the situation.  The Bishops followed Administrator Morris' suggestion.  On August 31, 2005, CEO Morrison left a telephone message at the Bishop's home stating that C.B. "does not have a placement at Oakstone preschool [and] has been referred back to the [Worthington School] district[.]"  (ECF No. 42-1 at 40.)

The parties disagree as to the ramifications of these occurrences.  The Bishops contend that CEO Morrison placed C.B. in a classroom that was not in compliance his IEP and that after the Bishops refused to all C.B. to stay in that classroom she expelled him from Oakstone.  Defendants claim that C.B.'s classroom assignment was in compliance with his IEP, and when the Bishops refused to place C.B. in that classroom they effectively withdrew C.B. from Oakstone.

Plaintiffs allege both federal and state law claims against Defendants.  On January 16, 2011, Defendants filed a motion for summary judgment on Plaintiffs' state law claims for breach of contract and tortious interference with contract ("Defendants' First Motion for Summary Judgment").  (ECF No. 42.)  On August 8, 2011, this Court denied Defendants' First Motion for

Summary Judgment as it related to Plaintiffs' breach of contract claim and granted Defendants' motion as it related to Plaintiffs' tortious interference with contract claim.  (ECF No. 55.)  On August 18, 2011, Defendants moved this Court to reconsider and set aside the portion of its decision that denied summary judgment on Plaintiffs' breach of contract claim ("Defendants' First Motion for Reconsideration").  (ECF No. 59.)

On June 30, 2011, Defendants moved for summary judgment on Plaintiffs' claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act or Section 504"), the Americans with Disabilities Act of 1991, 42 U.S.C. § 12131 ("ADA"), and the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"), ("Defendants' Second Motion for Summary Judgment").  (ECF No. 53.)  On September 15, 2011, this Court granted Defendants' Second Motion for Summary Judgment as it related to Plaintiffs' claims filed under the ADA, Section 1983 and Plaintiffs' punitive damages claim for alleged violations of Section 504 and denied the motion as it related to Plaintiffs' disability discrimination claim filed under Section 504 and Plaintiffs' claim for compensatory damages for alleged violations of Section 504.  (ECF No. 66.)  On October 13, 2011, Defendants moved this Court to reconsider and set aside its ruling denying summary judgment on Plaintiffs' disability discrimination claim filed under Section 504 ("Defendants' Second Motion for Reconsideration").  (ECF No. 71.)

On November 10, 2011, the Court denied Defendants' First Motion for Reconsideration and Defendants' Second Motion for Reconsideration.  (ECF No. 85.)  In its decision, however, the Court noted that Defendants raised an issue that had not been briefed and could be dispositive of Plaintiffs' Section 504 claim, *i.e.*, whether a private preschool such as Oakstone was subject to the Rehabilitation Act.  The Court therefore accepted Defendants' arguments

made in their motion for reconsideration and their reply brief as a separate motion for summary judgment on this issue and accepted Plaintiffs' arguments made in their opposition memorandum as an opposition to that motion. The Court directed the parties to each file one additional brief as a supplement to their already submitted arguments. The parties have timely filed their supplemental briefs and the issue is now ripe for review.

## II. Standard

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

## III. Discussion

In its decision denying Defendants' Second Motion for Reconsideration, the Court explained:

> Because Defendants did not move for summary judgment on the grounds that as a preschool Section 504 does not apply to it, a motion for reconsideration is not the appropriate means to bring this issue before the Court. The issue, however, is a dispositive one.

(ECF No. 85 at 25.)

After reviewing the briefing before it related to this issue, the Court realizes that it misunderstood Defendants' argument. Defendants do not claim that Oakstone, as a private preschool, is not subject to Section 504. Defendants argue instead that they are entitled to

4

summary judgment on Plaintiffs' claim because Section 504 does not require Oakstone to provide C.B. with a free appropriate public education ("FAPE").  Defendants' argument is not well taken.

Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability in the United States, as defined in section 7(20) [29 U.S.C.S. § 705(20)], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[1] . . . ."  29 U.S.C. § 794(a) (bracket in original).   The regulations governing Section 504 education claims are set out in Title 34 of the Federal Regulations.  Specifically, Part 104 of Title 34 is related to nondiscrimination in programs receiving federal financial assistance, and Subpart D relates to "Preschool, Elementary, and Secondary Education."  Section 104.39 is titled "Private education" and provides:

> (a) A recipient that provides private elementary or secondary education may not, on the basis of handicap, exclude a qualified handicapped person if the person can, with minor adjustments, be provided an appropriate education, as defined in § 104.33(b)(1), within that recipient's program or activity.
>
> . . . .
>
> (c) A recipient to which this section applies that provides special education shall do so in accordance with the provisions of §§ 104.35 and 104.36.  Each recipient to which this section applies is subject to the provisions of §§ 104.34, 104.37, and 104.38.

34 C.F.R. § 104.39.  Subsection (a) refers to "an appropriate education, as defined in §

---

[1] This Court previously rejected Defendants' argument that they were entitled to summary judgment on this claim because they are not recipients of federal financial assistance. (ECF No. 66 at 11-17) ("The Court concludes that Plaintiffs have established that CCDE is a recipient of federal financial assistance[.]").

104.33(b)(1)," a section titled "Free appropriate public education," which provides:

> (b) Appropriate education. (1) For the purpose of this subpart, the provision of an appropriate education is the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of §§ 104.34, 104.35, and 104.36.

34 C.F.R. § 104.33.

Subsection (c) of 34 C.F.R. § 104.39 indicates that recipients to which that section applies are also subject to, *inter alia*, 34 C.F.R. § 104.38, a section titled "Preschool and adult education," which provides:

> A recipient to which this subpart applies that provides preschool education or day care or adult education may not, on the basis of handicap, exclude qualified handicapped persons and shall take into account the needs of such persons in determining the aid, benefits or services to be provided.

34 C.F.R. § 104.38.

Defendants argue that § 104.39 applies only to "private elementary and secondary" schools and requires an "appropriate" education to be provided, *i.e.*, at FAPE, and § 104.38 applies private preschools such as Oakstone and does not require an appropriate education, or a FAPE, to be provided. (ECF No. 88 at 1) (Section "504's FAPE requirements are not applicable to private preschools."). Thus, Defendants conclude that the Rehabilitation Act does not require Oakstone to provide an appropriate education or a FAPE to any disabled student.

Even if Defendants' contentions are accurate, however, it does not mean that they are entitled to summary judgment on Plaintiffs' Section 504 claim. Both regulations, § 104.38 and § 104.39 prohibit discrimination in educational services based on an individual's disability. Both require the educational facility to accommodate the disabled individual in some way to

provide him or her with services.  Section 104.39 requires the facility to provide an "appropriate" education, which is "regular or special education and related aids and services that are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons," and § 104.38 requires the educational entity to "take into account the special needs of" the disabled individual "in determining the aid, benefits or services to be provided."  In assessing the needs of the disabled individual, both provisions prohibit discrimination based on the disability.

To determine whether one an educational facility that is subject to Section 504 is liable for disability discrimination under the Rehabilitation Act, a plaintiff has the burden of showing that he or she was excluded from participation in, denied the benefits of, or subjected to discrimination in the educational program.  *See* 29 U.S.C. § 794(a).  The exclusion from, denial of benefits, or subjection to discrimination complained of by Plaintiffs is Oakstone's alleged failure to place C.B. in a class that was in compliance with his IEP and CEO Morrison's subsequent expulsion of C.B. from Oakstone.  As to these allegations, the Court has determined that Plaintiffs have raised genuine issues of material fact as to whether Defendants' actions constituted discrimination solely because of C.B.'s autism.  That issue will be determined by a jury.

In their previous briefs and pleadings, Plaintiffs would have more accurately described Oakstone's obligation under Section 504 as one that required it to take into account C.B.'s special needs when determining the aid, benefits or services that it was required to provide to C.B. as opposed to describing the obligation as one to provide a FAPE, *i.e.*, to provide related aids and services that were designed to meet C.B.'s individual educational needs as adequately

7

as the needs of nonhandicapped persons.  Had Plaintiffs used the former descriptive language, as opposed to the latter, the Court would not have used the term "FAPE" to identify the services Section 504 required Oakstone to provide to C.B.  Use of the term "FAPE" in the private preschool setting is misleading.  However, in the circumstances before the Court the misleading use of the term FAPE is of no consequence.  Plaintiffs' allegations are that Oakstone discriminated against C.B. because he is autistic by failing to place him in the pre-k classroom and expelling him.  Whether Plaintiffs refer to this failure and expulsion as a denial of a FAPE or a failure to take into account C.B.'s needs when determining his educational program is of no moment.  The Rehabilitation Act prohibits Oakstone from denying C.B. the educational program offered based upon his autism.  Consequently, Defendants' new argument that it is entitled to summary judgment on Plaintiffs' Rehabilitation Act claim because private preschools are not subject to the FAPE provisions is without merit.

## IV.  Conclusion

Based on the foregoing, the Court **DENIES** Defendants' Third Motion for Summary Judgment.

**IT IS SO ORDERED.**

>**/s/ Gregory L. Frost**
>**GREGORY L. FROST**
>**UNITED STATES DISTRICT JUDGE**