UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

COURTLAND BISHOP, et al.,

                Plaintiffs,                      Case No. 2:08-cv-766
                                                          JUDGE GREGORY L. FROST
      v.                                  Magistrate Judge Mark R. Abel

THE CHILDREN'S CENTER FOR
DEVELOPMENTAL ENRICHMENT, et al.,

                Defendants.

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motions *in Limine* (ECF No. 86) and

Defendants' Memorandum in Opposition to Plaintiffs' Motion *in Limine* (ECF No. 101).  For the

reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion.

## I.  Background

Plaintiffs Courtland and Michelle Bishop and their minor son C.B. reside in the

Worthington, Ohio School District ("Worthington Schools").  In 2002 Worthington Schools

placed C.B. at Oakstone Academy ("Oakstone") after he was identified as a child with

disabilities under the Individuals with Disabilities Education Improvement Act, 20

U.S.C. § 1400 *et seq.*  Oakstone is a school that educates autistic children in an environment with

typically developing children.  C.B.'s typically developing twin was also enrolled at Oakstone.

Defendant the Children's Center for Developmental Enrichment ("CCDE") is a private,

non-profit corporation that is organized under Ohio law for charitable and educational purposes.

CCDE operates Oakstone.  Rebecca Morrison, Ph.D., is CCDE's Chief Executive Officer

("CEO") and is named as a defendant in this action in her individual and official capacities.

After the Court issued its decisions on Defendants' motions for summary judgment, and Defendants' motions for reconsideration of those decisions, the claims remaining in this case for trial are Plaintiffs' discrimination claim filed under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and Plaintiffs' claim for breach of contract.

## II.  Standard

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion *in limine*, the United States Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials."  *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  The purpose of a motion *in limine* is to allow a court to rule on issues pertaining to evidence in advance of trial in order to avoid delay and ensure an even-handed and expeditious trial.  *See Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

Courts, however, are generally reluctant to grant broad exclusions of evidence *in limine*, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence."  *Koch v. Koch Indus., Inc.*, 2 F. Supp.2d 1385, 1388 (D. Kan 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).  To obtain the exclusion of evidence under such a motion, a party must prove that the evidence is clearly inadmissible on all potential grounds.  *See Ind. Ins. Co.*, 326 F. Supp. 2d at 846; *Koch*, 2 F. Supp. 2d at 1388; *Cf. Luce*, 469 U.S. at 41.  "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."  *Ind. Ins. Co.*, 326 F. Supp.2d at 846.  Denial of a

2

motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded. *Id.* The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*. *Id.* (citing *Connelly,* 874 F.2d at 416; *Luce,* 469 U.S. at 4).

### III. Federal Rules of Evidence

The following Federal Rules of Evidence are pertinent to the motions before the Court.

## A.  Rules 401 and 402

Federal Rule of Evidence 401provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Federal Rule of Evidence 402 provides:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

## B.  Rule 403

Federal Rule of Evidence 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

## C.  Rule 801(c)

"Hearsay" means a statement that:

(1) the declarant does not make while testifying at the current trial or hearing; and

(2) a party offers in evidence to prove the truth of the matter asserted in the statement.

### IV.  Plaintiffs' Motions *in Limine*

In Plaintiffs' brief, they file seven separate motions *in limine*.

## A.  Plaintiffs' First Motion

Plaintiffs ask the Court to prevent witnesses for Defendants from making any reference about Worthington Schools' failure to pursue legal action against CCDE for breach of contract. Plaintiffs argue that suit by a party to the contract (here Worthington Schools) is not a prerequisite for a third party beneficiary (here Plaintiff C.B.) to bring suit against the other party to the contract (here CCDE).  Therefore, Plaintiffs conclude, whether or not Worthington Schools chose to pursue enforcement of the contract is not relevant or material to the issue of breach of contract by CCDE.  Further, Plaintiffs argue that raising the question of Worthington School's failure to sue CCDE would result in confusion of the issues, misleading of the jury and prejudice to the rights of Plaintiffs.

Defendants do not argue that this evidence is relevant to Plaintiffs' breach of contract claim.  Instead, Defendants contend that the evidence is relevant to their defense to Plaintiffs' discrimination claim.  Specifically, Defendants claim that the fact that Worthington Schools did not pursue enforcement of the contract is relevant to "Defendants' belief that C.B. had been withdrawn from the school and thus that discrimination was not a factor in C.B.'s departure" or in Oakstone's decision to allow another child to take C.B.'s place at the school.  (ECF No. 101 at 2.)  Defendants' arguments are not well taken.

On August 29, 2005, the first day of school for the 2005-2006 school year, the Bishops refused to allow C.B. to stay in the classroom in which CEO Morrison had placed him.  Two

4

days later, CEO Morrison left a telephone message at the Bishop's home stating that C.B. "does

not have a placement at Oakstone preschool [and] has been referred back to the [Worthington

School] district[.]"  (ECF No. 42-1 at 40.)   CEO Morrison testified that she replaced C.B.

because she believed that the Bishop's had withdrawn him from Oakstone.  Therefore,

Morrison's belief that C.B. had been withdrawn from Oakstone and her decision to offer C.B.'s

place at Oakstone to another child could not possibly have been based on any action or non-

action by Worthington Schools regarding whether to sue Oakstone for a breach of contract.

There was not even a potential breach of the contract until the disagreement between the Bishops

and Oakstone about C.B.'s classroom placement.  Consequently, the fact that Worthington

Schools did not seek enforcement of the contract could not in any way have informed CEO

Morrison's belief that C.B. had been withdrawn from Oakstone.  Further, the fact that

Worthington Schools did not sue on the contract could result in confusion of the issues to the

jury.  Accordingly, the Court **GRANTS** Plaintiffs' First Motion *in Limine*.

### B.  Plaintiffs' Second Motion

Plaintiffs ask that the Court exclude evidence regarding any alleged non-payment of

C.B.'s tuition for the 2002-2003 school year as irrelevant, immaterial and unduly prejudicial.

This Court disagrees.

Defendants explain that when the Bishops sought admission for C.B. to Oakstone,

Worthington Schools and the Bishops had been in a disagreement about whether to place C.B. at

Oakstone in 2002-2003.  The Bishops wanted to place C.B. at Oakstone even though

Worthington Schools had not agreed to pay his tuition.  CCDE admitted C.B. and the Bishops

agreed to pay C.B.'s tuition if Worthington Schools did not.  Worthington Schools did not fund

the placement until mid-way through the school year and only for the time after C.B. had

reached three years of age.  When CCDE sought payment for the first half of the year from the

Bishops, they said they could not pay.  CCDE forgave the $3,850.50 debt.  This Court agrees

with Defendants that this "history is . . . relevant because it shows CCDE's willingness to keep

C.B. in the school, when his parents wanted him there, even though his tuition was not paid."

(ECF No. 101 at 3.)   That is, the evidence is relevant to CCDE's intent regarding its alleged

expulsion of C.B.  Further, the Court does not find that the probative value of this evidence is

substantially outweighed by the danger of unfair prejudice.

Many of Plaintiffs' concerns are properly dealt with on cross examination, where

Plaintiffs are free to inquire into CCDEs reason for not charging C.B. for the partial year,

whether there was any disagreement about from whom the payment was due, and any changes in

CCDE's treatment of C.B. from the 2002-2003 school year to the 2005-2006 school year.  Thus,

the Court **DENIES** Plaintiffs' Second Motion *in Limine*.

## C.  Plaintiffs' Third Motion

In this motion, Plaintiffs request that the Court "preclude Defendants' counsel or any

witness called to testify from presenting evidence or argument regarding any educational

consultation provided by [CEO] Rebecca Morrison to counsel for Plaintiffs as irrelevant and

immaterial to the issues presented, as well as possibly leading to improper and prejudicial

inferences."  (ECF No. 86 at 3.)  Defendants do not oppose this request.  The Court agrees that

the evidence is irrelevant and, therefore, **GRANTS** Plaintiffs' Third Motion *in Limine*.

## D.  Plaintiffs' Fourth Motion

In Plaintiffs Fourth Motion *in Limine*, they request that the Court "preclude Defendants'

counsel or any witness called to testify from presenting evidence or argument regarding insurance or a lack thereof and/or any possible financial impact of a verdict upon [CCDE]." (ECF No. 86 at 5) (relying also on Fed. R. Evid. 411).  Defendants do not oppose this motion. The Court agrees that "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully."  Fed. R. Evid. 411.  The Court therefore **GRANTS** Plaintiffs' Fourth Motion *in Limine*.

### E.  Plaintiffs' Fifth Motion

In this motion, Plaintiffs move the "Court, pursuant to Federal Rule of Evidence 615, to exclude witnesses, other than the parties or the designated representative of [CCDE] from the courtroom prior to their testimony."  (ECF No. 86 at 4.)  Defendants do not oppose this motion. Therefore, the Court **GRANTS** Plaintiffs' Fifth Motion *in Limine*.

### F.  Plaintiffs' Sixth Motion

In Plaintiffs' Sixth Motion *in Limine*, Plaintiffs request that they be allowed to provide transcriptions of the August 31, 2005 telephone message left by CEO Morrison "to aid in the understanding of the recording," with the following instruction to be provided thereon:

> You have listened to a tape recording that has been received in evidence.  Each of you was given a transcript of the recording to help you identify speakers and as a guide to help you listen to the tape.  However, bear in mind that the evidence is the tape recording, not the transcript.  If you heard something different from what appeared in the transcript, what you heard is controlling.  After the tape has been played, the transcript will be taken from you.

(ECF No. 86 at 4-5.)

Defendants argue that, even if the transcription were relevant, use of it should be excluded under Federal Rule of Evidence 403:

> The transcriptions would result in unfair prejudice because they give undue weight

> to some unknown third party's interpretation or perception of the statements made
> in the message.  If there are any mistakes in the transcriptions (which CCDE has not
> been able to determine because they have not seen the transcriptions Plaintiffs
> propose to use), that would mislead the jury.  The transcriptions are also needless,
> cumulative, and, therefore, will result in wasted time, since Plaintiffs plan to play the
> voice mail message itself for the jury.  Plaintiffs' request to provide a jury instruction
> as to the transcriptions only compounds the cumulative nature of the transcriptions
> and places unfair significance on this single item of evidence.  Defendants object
> to this proposed instruction as being unfair and prejudicial.

(ECF No. 101 at 4-5.)  Defendants' arguments are well taken.

Plaintiffs' have not indicated that the recorded message is difficult to hear so that a transcript of the recording would be helpful to the jury.  Nor has Plaintiff provided information about the means by which the transcript was made.  Under these circumstances, the Court finds that the transcriptions are cumulative and would likely place undue emphasis on the importance of the recorded message.  Thus, the Court **DENIES** Plaintiffs' Sixth Motion *in Limine*.  If the recording is difficult to understand and if Plaintiff can provide a foundation concerning the transcription and how it was made, the Court may reconsider this ruling.

## G.  Plaintiffs' Seventh Motion

In this motion, Plaintiffs ask the Court to "prohibit all argument, evidence or testimony regarding the medical status, condition, severity or diagnosis of [CEO] Rebecca Morrison's mother as irrelevant, immaterial and hearsay aimed at eliciting jury sympathy rather than adducing the facts material to the issues."  (ECF No. 86 at 5.)  Defendants, however, argue that this information is relevant because:

> Plaintiffs have repeatedly made an issue of Dr. Morrison's responsiveness to certain
> events.  In fact, the main focus of Plaintiffs' claims is that Dr. Morrison specifically
> discriminated against the minor plaintiff, and a large portion of the evidence
> Plaintiffs rely on is Dr. Morrison's lack of communication at the time school started.
> During that time period, however, Dr. Morrison's mother was in the hospital so ill
> that Dr. Morrison's attention was required there.  Precluding Dr. Morrison from

> explaining this will have the effect of tying Defendants' hands and precluding them from explaining her reactions to the situation, which Plaintiffs hope will lead to negative inferences and bolster their discrimination claim.  The fact that Dr. Morrison believed that she needed to attend to her critically ill mother will be not be used to foster sympathy for her in the defense of this case, but to explain the circumstances surrounding Plaintiffs' claims.

(ECF No. 101 at 6.)  This Court agrees with Defendants that the information is relevant.

With regard to Plaintiffs' argument that, even if it is relevant, it should be excluded under Federal Rule of Evidence 403 because it is aimed at eliciting jury sympathy, Defendants argue that this concern "can be adequately addressed with a common jury instruction directing jurors to perform their duties fairly and impartially, without allowing sympathy to influence them."  (ECF No. 101 at 7.)  This Court agrees.  Further, the probative value of the evidence is simply not substantially outweighed by the danger of unfair prejudice that jury sympathy may provide.

Finally, as to Plaintiffs' hearsay argument, Defendants contend that CEO Morrison's testimony regarding her mother's health does not fall within the definition of hearsay because she "would not be offering testimony regarding her mother's health to prove the truth of that matter [but instead] she would be offering that testimony to explain the timing of events at issue in this case and her state of mind when she determined that she could not be at the school on August 29, 2005 or attend an IEP meeting while she understood that her mother was so critically ill."  This Court, again, agrees.  Accordingly, the Court **DENIES** Plaintiffs' Seventh Motion *in Limine.*

### V.  Conclusion

Based on the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motions *in Limine* (ECF No. 86).  Specifically, the Court **GRANTS** Plaintiffs' First, Third, Fourth and Fifth Motions *in Limine* and **DENIES** Plaintiffs' Second, Sixth and Seventh

9

Motions *in Limine*.  As with all *in limine* decisions, these rulings are subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda.

      IT IS SO ORDERED.

**/s/ Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**
