UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

COURTLAND BISHOP, et al.,

       Plaintiffs,                          Case No. 2:08-cv-766
                                                  JUDGE GREGORY L. FROST
       v.                                       Magistrate Judge Mark R. Abel

THE CHILDREN'S CENTER FOR
DEVELOPMENTAL ENRICHMENT, et al.,

       Defendants.

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Exclude Testimony Under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ("Defendants' *Daubert* Motion") (ECF No. 102) and Plaintiffs' Response to Defendants' *Daubert* Motion. For the reasons that follow, the Court **DENIES** Defendant's motion.

**I. Background**

Plaintiffs Courtland and Michelle Bishop and their minor son C.B. reside in the Worthington, Ohio School District ("Worthington Schools"). In 2002 Worthington Schools placed C.B. at Oakstone Academy ("Oakstone") after he was identified as a child with disabilities under the Individuals with Disabilities Education Improvement Act, 20 U.S.C. § 1400 *et seq.* Oakstone is a school that educates autistic children in an environment with typically developing children. C.B.'s typically developing twin was also enrolled at Oakstone. Defendant the Children's Center for Developmental Enrichment ("CCDE") is a private, non-profit corporation that is organized under Ohio law for charitable and educational purposes. CCDE operates Oakstone. Rebecca Morrison, Ph.D., is CCDE's Chief Executive Officer

1

("CEO") and is named as a defendant in this action in her individual and official capacities.

After the Court issued its decisions on Defendants' motions for summary judgment, and Defendants' motions for reconsideration of those decisions, the claims remaining in this case for trial are Plaintiffs' discrimination claim filed under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and Plaintiffs' claim for breach of contract.

## II. Standard

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion *in limine*, the United States Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion *in limine* is to allow a court to rule on issues pertaining to evidence in advance of trial in order to avoid delay and ensure an even-handed and expeditious trial. *See Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

Courts, however, are generally reluctant to grant broad exclusions of evidence *in limine*, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp.2d 1385, 1388 (D. Kan 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). To obtain the exclusion of evidence under such a motion, a party must prove that the evidence is clearly inadmissible on all potential grounds. *See Ind. Ins. Co.*, 326 F. Supp. 2d at 846; *Koch*, 2 F. Supp. 2d at 1388; *Cf. Luce*, 469 U.S. at 41. "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential

2

prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp.2d at 846.  Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial.  Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded.  *Id.*  The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*.  *Id.* (citing *Connelly,* 874 F.2d at 416; *Luce,* 469 U.S. at 4).

### III.  Discussion

In Defendants' motion, they request exclusion of certain expert opinions or portions of those opinions pursuant to Federal Rule of Evidence 702 and the test set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  The United States Supreme Court held in *Daubert* that the Federal Rules of Evidence had superseded the "general acceptance" test of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and that Rule 702 requires that trial judges perform a "gate-keeping role" when considering the admissibility of expert testimony. *Daubert*, 509 U.S. at 597.  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Further, the Supreme Court has made clear that Rule 702 applies not only to scientific testimony but also to other types of expert testimony based on technical or other specialized knowledge.  *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

The trial court's gate-keeping role is two-fold.  First, a court must determine whether the

proffered testimony is reliable. *See Daubert*, 509 U.S. at 590. The reliability assessment focuses on whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* The expert's testimony must be grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief. *Id.* Thus, the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3rd Cir. 1994).

The Supreme Court in *Daubert* set out four non-exclusive factors to aid in the determination of whether an expert's methodology is reliable: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community. *Daubert*, 509 U.S. at 593-94. *See also Deal v. Hamilton County Bd. of Ed.*, 392 F.3d 840, 851 (6th Cir. 2004). The Court in *Kumho Tire* stressed that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial judge may consider one or more of the *Daubert* factors when doing so will help determine that expert's reliability. *Kumho Tire*, 526 U.S. at 150. The test of reliability is a "flexible" one, however, and the four *Daubert* factors do not constitute a "definitive checklist or test" but must be tailored to the facts of the particular case. *Id.* (quoting *Daubert*, 509 U.S. at 593); *see also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 470 (6th Cir. 2004). The particular factors will depend upon the unique circumstances of the expert testimony involved. *See Kumho Tire Co.*, 526 U.S. at 151-52.

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue; that is, whether the opinion is relevant to the facts at issue. *See Daubert*, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. *See United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993). Thus, an expert's testimony is admissible under Rule 702 if it is predicated upon a reliable foundation and is relevant.

The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury; rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The judge's role is simply to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value. *Wellman v. Norfolk and W. Ry. Co.*, 98 F. Supp. 2d 919, 923-24 (S.D. Ohio 2000).

Guided by the foregoing concerns, the Court will consider Defendants' motion. In that motion, Defendants argue that the testimony of speech and language pathologist Lisa Audet, Ph.D, CCC-SLP and occupational therapist Barbara B. Marin Wavrek, MHS, OTR/L should be excluded because they are not qualified as experts in the areas of their proposed testimony and because their methodology is faulty. This Court disagrees.

With regard to her qualifications, Lisa Audet is an assistant professor in speech pathology and audiology at Kent State University. She took her doctorate in special education, wrote her dissertation on behavior in children with autism, has taught applied behavior analysis, and has

published on the relationship between communication disorders and emotional and behavioral disorders in children, as well as repetitive behaviors in autism. As a consultant, Professor Audet has conducted countless functional behavior assessments on autistic children in many different contexts. The Court finds that Professor Audet is well qualified as an expert in speech pathology, autism and special education.

With regard to Barbara Wavrek, she has her bachelor's and master's degrees in occupational therapy and has completed all coursework for her doctorate degree in human development and family science. She has completed extensive training workshops related to occupational therapy. Wavrek provided occupational therapy to the minor plaintiff beginning when he was 18 months old, including before and after the time he was enrolled at Oakstone Academy. The Court finds that Barbara Wavrek is well qualified as an expert in occupational therapy.

As to Defendants' complaints about the methodology employed by Professor Audet and Expert Wavrek, those complaints go to the weight of their testimony as opposed to its admissibility. Defendants contend that there are a number of medical explanations for the minor plaintiff's behavior other than those opined by Professor Audet and Expert Wavrek. However, "[i]n order to be admissible on the issue of causation, an expert's testimony need not eliminate all other possible causes of the injury." *Jahn v. Equine Services*, PSC, 233 F.3d 382, 390 (6th Cir. 2000). "The fact that several possible causes might remain 'uneliminated' . . . only goes to the accuracy of the conclusion, not to the soundness of the methodology." *Id.* (citation omitted). Plaintiffs, as the proponents of the testimony, do not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable. Here, the Court

finds that the methodology underlying these experts' testimony is reliable.

All of Defendants' complaints are more properly dealt with by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof[.]" *Daubert*, 509 U.S. at 596. This Court's role is simply to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations. The Court finds that both Professor Audet's and Expert Wavrek's proposed testimony is relevant and reliable and will certainly be helpful to the jury.

### IV. Conclusion

Based on the foregoing, the Court **DENIES** Defendants' *Daubert* Motion. (ECF No. 102.) As with all *in limine* decisions, this ruling is subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memorandum in opposition to that motion.

**IT IS SO ORDERED.**

>   **/s/ Gregory L. Frost**
>   **GREGORY L. FROST**
>   **UNITED STATES DISTRICT JUDGE**